ANGEL et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4084.   Decided July 15, 1924.   (228 Pac. 509.)

1. MASTER AND SERVANT—WHETHER COMPENSATION CLAIMANT WAS EMPLOYÉ JURISDICTIONAL QUESTION FOR COURT. Whether compensation claimant was an employé of a contractor within Industrial Act is a jurisdictional question, calling for judicial determination.[1]

2. MASTER AND SERVANT—"EMPLOYÉ" DEFINED. An employé is a servant of his master, who employs him and fixes the terms of his compensation, and who can direct and control all of the servant's movements in and about the work, and discharge him ad libitum, unless there is some special agreement which limits his authority.

3. MASTER AND SERVANT—COMPENSATION CLAIMANT DOING CEMENT WORK FOR CONTRACTOR HELD NOT "EMPLOYÉ," BUT "INDEPENDENT CONTRACTOR." Claimant, who was hired by a contractor to pour cement at a certain price per cubic foot, and whose work was supervised by the contractor only to the extent of satisfying himself that it was done in a workmanlike manner as the work progressed, and of showing claimant where to commence, held not an "employé," but an "independent contractor," under Comp. Laws 1917, § 3110, as amended by Laws 1919, c. 63.[2]

GIDEON and CHERRY, JJ., dissenting.

Proceeding for compensation under the Industrial Act by Louis Skoubye, claimant, opposed by J. H. Angel, employer,

---

[1] Industrial Commission v. Evans, 52 Utah, 394, 174 Pac. 825.

[2] Callahan v. Salt Lake City, 41 Utah, 300, 125 Pac. 863.

See 20 C. J. p. 1242; Workmen's Compensation Acts, §§ 38, 42, 140.

and the Standard Accident Insurance Company, insurance carrier. The Industrial Commission awarded compensation, and the employer and the insurance carrier bring certiorari.

AWARD VACATED AND SET ASIDE.

*A. E. Moreton,* and *Ray Van Cott,* both of Salt Lake City, for plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

THURMAN, J.

This is a proceeding in certiorari to review an award by the defendant Commission, allowing compensation to the defendant Skoubye for an injury resulting from an accident while working upon a building belonging to the plaintiff Angel. Skoubye claims that he was an employé of Angel and that the accident occurred in the course of his employment; while Angel contends that Skoubye was an independent contractor, and not within the provisions of the Industrial Act (Comp. Laws 1917, §§ 3061-3165).

The Commission, after hearing the evidence, found the following facts:

"(1) That several days prior to March 26, 1923, Mr. J. H. Angel, contractor, telephoned Mr. Louis Skoubye, the applicant herein named, and advised him that he would like to give him employment pouring concrete, and asked Mr. Skoubye what he would charge per foot for pouring said concrete. Mr. Skoubye replied that he would pour the concrete for five cents per cubic foot. In pouring the concrete a machine was used that was owned by Louis Skoubye. The sand, gravel, cement, and forms were furnished by the employer, J. H. Angel. The men selected by Mr. Skoubye to assist him in doing concrete work for Mr. Angel were paid by Mr. Angel, and the sums paid to the said men were deducted from the price of five cents per cubic foot which the employer agreed to pay Mr. Skoubye. Mr. Skoubye was subject to the supervision and direction of the employer, Mr. Angel. That Mr. Angel's foreman on several occasions directed the men assisting Mr. Skoubye in the pouring of concrete as to the method of

tamping the concrete. Mr. Skoubye at no time consulted the plans and specifications of the building being constructed by the employer at 446 East Third South Street, Salt Lake City, Utah, and was merely employed by Mr. Angel to do the concrete work on this particular building at five cents per cubic foot. Mr. Skoubye had nothing to do with making or erecting the forms used for the concrete or with erecting or changing the runway used by the employers for wheeling concrete to the said forms, but merely followed the instructions of Mr. Angel and his foreman as to how he should proceed and where he was to pour.

"(2)   On the 26th day of March, 1923, Louis Skoubye injured his right hand while employed by J. H. Angel, whose regular business was that of general contractor; that as a result of said injury he suffered amputation of his right arm between the elbow and wrist; that as a result of said injury the applicant was temporarily totally disabled up to April 30, 1923; that on said date he secured employment at the stockyards and was paid a wage of $10 a day; that as a result of said injury the applicant paid to the Holy Cross Hospital the sum of $41; that the applicant was attended by Dr. C. F. Pinkerton, who, up to the present time, has rendered no bill for services rendered. Mr. Skoubye had worked only 30 minutes for Mr. Angel when he was injured. It was testified that Skoubye would have earned, in all, probably $8 per day, had he not been injured.

"(3)   That on March 26, 1923, Mr. J. H. Angel had in his employ three or more workmen and had procured workmen's compensation with the Standard Accident Insurance Company."

From the foregoing findings the Commission concluded that Skoubye was an employé of Angel, within the Industrial Act, and awarded him compensation at the rate of $16 per week for a period of 100 weeks, and also reimbursement for money expended for medical and hospital service.

Plaintiffs vigorously challenge the validity of the first and second findings and the conclusion resulting therefrom. They insist that the relation of Skoubye to Angel was that of independent contractor and not of an employé, and that therefore the Commission exceeded its jurisdiction in making the award.

Whether or not Skoubye was an employé of Angel, within the meaning of the Industrial Act, is a jurisdictional question calling for a judicial determination. *Ind. Comm.* v. *Evans,* 52 Utah, 394, 174 Pac. 825; *Miller & Lux* v. *Ind. Acc.*

*Comm. of Cal.*, 179 Cal. 764, 178 Pac. 960, 7 A. L. R.        1
1291. It becomes our duty, therefore, to determine
the facts from a preponderance of the evidence and apply
thereto the law of the case.

It would be assuming a useless burden to enter upon a de-
tailed statement of the evidence. After a careful review of
the same, we find the material facts to be that the plaintiff
Angel for the last 10 or 12 years has been the owner of the
land upon which the building was being constructed; that
during all of said time he contemplated building an apart-
ment house on the land for rental purposes. During the
same period of time Angel had been a building contractor
himself and, as to the building in question, did not employ
a contractor for the entire work, but retained general super-
vision in himself. A few days prior to the 26th day of March,
1923, Angel, who was acquainted with Skoubye, who was
skilled in cement work, called Skoubye by phone and asked
him if he would like to pour cement for the building, and
Skoubye said he would. Angel gave him the approximate
size of the building and inquired as to the price he would
charge. Skoubye told him he would charge five cents per
cubic foot and was to furnish his own tools and employ his
own assistants. It was then arranged that Skoubye would
come and examine the premises. He did so very soon there-
after and found that the basement had been excavated and
the trench for the footings nearly completed. He met Angel
on the ground, and after viewing the premises and ascertain-
ing the character of the work the agreement made over the
phone was confirmed. Skoubye testified that in the conver-
sation over the phone he told Angel he (Angel) should take
care of the compensation insurance, and that Angel agreed to
do it. Skoubye's testimony does not show whether the com-
pensation insurance included himself or was solely for the
men he employed. Angel denies that anything was said
about compensation insurance, but says that, under a contract
with Skoubye the year before, he had paid for compensation
for Skoubye's employés, but not for Skoubye himself. The
contract was quite informal, no doubt due to the fact that

Skoubye.had been engaged by Angel during the year previous
for the same kind of work, and under circumstances some-
what similar.  Skoubye, in pursuance of the contract, moved
his tools upon the ground.  They consisted of wheelbarrows,
shovels, and a machine operated by gasoline engine.  The
machine, in the evidence, is called a "mixer."  There may
have been other tools of minor importance, but, whatever
they were, they were all furnished by Skoubye under and in
pursuance of the contract.

On the 26th day of March, 1923, Skoubye, with three other
men employed by himself, entered upon the work.  One of
the men, Mr. Leatham, was his son-in-law.  Skoubye was to
pay one of the men $5 per day, and the other two $3.50 each.
Angel, under the contract, was to furnish the material for
the cement and construct the necessary forms and whatever
was necessary for the reception of the cement for the founda-
tion of the building.  The mixing of the cement and deposit-
ing the same, first in the trench for the footings, and after-
wards in the forms for the walls, constituted the job which
Skoubye had undertaken.  Of course, the work was to be
done in a workmanlike manner, and Skoubye, as before stated,
was skilled in that kind of work.

On the date last mentioned, viz. March 26, 1923, Skoubye
and his men commenced the work of mixing the cement and
wheeling it to the place where it was to be deposited, pointed
out to them by the general foreman employed by Angel, and
within about 30 minutes after the work commenced, Skoubye,
while oiling the machinery which was in operation, in some
way got his arm drawn into the machinery, resulting in a
serious injury.  He was immediately hurried to the hospital,
where his arm was amputated between the elbow and the
wrist.  On account of the accident, the work on Skoubye's
job was suspended until the next day, when, by arrangement
between him and Leatham, the latter took charge of the work
and completed the contract.  During the progress of the
work, Angel on one occasion, and his foreman on a few occa-
sions called attention to the fact that the cement was not
being properly tamped, and gave some instructions in that

regard.  By arrangement between Angel and Skoubye, Angel paid Skoubye's men as the work progressed, on statements made by Leatham, and also on statements made by the foreman.  Angel's explanation as to why his foreman kept time was to protect Angel, in the event that Skoubye failed to pay the men in full.  This evidently was to protect Angel against possible mechanics' liens.  Skoubye himself was not paid anything until the job was completed and the amount due ascertained.  This was found by deducting from the cost of the entire job, at five cents per cubic foot, the amount previously paid to Skoubye's employés.  Some amount was also allowed Skoubye on final settlement for time lost by his men on account of Angel's delay in furnishing certain material. Whether or not Skoubye was an employé of Angel or an independent contractor, under the above facts, is satisfactorily determined, in our opinion, by reference to Comp. Laws Utah, § 3110, as amended in Sess. Laws of Utah 1919, p. 156. The last paragraph of said section reads as follows:

"Where an employer procures any work to be done wholly or in part for him by a contractor over whose work he retains supervision or control, and the work so procured to be done is a part or process in the trade or business of said employer, then such contractor and all persons employed by him, and all subcontractors under him, and all persons employed by any such subcontractors, shall be deemed, within the meaning of this section, employees of such original employer.  Any person, firm or corporation engaged in the performance of work as an independent contractor, shall be deemed an employer within the meaning of this section.  The words 'independent contractor,' as herein used, is defined to be any person, association or corporation engaged in the performance of any work for another, and while so engaged, is independent of the employer in all that pertains to the execution of the work is not subject to the rule or control of the employer, is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design."

The Attorney General, in defending the award made by the Commission, quotes and relies upon the first sentence of the statute quoted, which, under the conditions named therein, appears to establish the relation of employer and employé. If this were all there is to the statute, we would have some

difficulty in arriving at the legislative intent, for a strict application of the language employed might interfere with the right of contract guaranteed by both the federal and state Constitutions. But when we consider the paragraph as a whole the intention of the Legislature becomes reasonably clear. The intention of the first part of the statute evidently was to prevent a custom, which was becoming prevalent with employers, of parceling out, under guise of contracts, the work to be performed among many so-called contractors, while at the same time the employer retained supervision and control of the work. This custom was clearly an attempt to evade the provisions of the Industrial Act and constituted the mischief which the Legislature sought to remedy. In our opinion it made no change in the general law as it existed before the act was passed, but it was, nevertheless, a solemn declaration of the Legislature that whenever the employer retained supervision and control of the work to be performed, no matter what relation he had sought to establish, the workmen under him were to be deemed his employés.

In our opinion the applicant Skoubye, under the facts of the instant case, was not under the supervision and control of Angel, as contemplated in the first part of the statute, but his status was that of an independent contractor, as defined in the concluding sentences of the statute. Skoubye took the work at a price of so much per cubic foot. He saw the premises, knew the work he was required to do, and knew, approximately, the quantity thereof. He was to employ his own help, fix their compensation, and pay them out of the five cents per cubic foot, or, in any event, Angel was in no manner liable to any one, except to pay Skoubye five cents per cubic foot for the work. Skoubye was master of his own time. He could be present and do nothing. He could be present and help the men, or he could go where he pleased, engage in other business if he desired, and was only responsible for the performance of the work in a workmanlike manner. This he was compelled to do in accordance with Angel's design, and as to this Angel had the right of supervision.

When Angel or his foreman saw that the tamping was not being properly done, so as to result in a finished workmanlike job, he had the right to call attention to the fact, and perhaps it was his duty to do so, in order to avoid a plea of estoppel. What Angel and his foreman did, it will be noted, went directly to the point of effecting a proper result in accordance with Angel's design. The nature of the work was such that it should be a finished job as the work progressed; that is to say, every face of the walls should be finished and completed in a workmanlike manner as the work progressed, and for that reason proper tamping before the cement hardened was vitally essential. This, in connection with showing the men where to commence, seems to be the • extent of the supervision exercised by Angel and his foreman. If Skoubye had seen fit to convey the cement from the mixer to the building in buckets or other receptacles, instead of by wheelbarrows, as was done, it would have been none of Angel's business, and Angel would have had no right to interfere. If one or more of the men had seen fit to work only one or two hours a day, instead of eight hours, which was supposed to constitute a day, it would have been no concern of Angel's. Nobody but Skoubye would have had the right to complain.

We find in this case every element necessary to constitute an independent contractor, and not a single element necessary to constitute an employé of Angel. An employé is a servant of his master. His master employs him and **3** fixes the terms of his compensation. He can direct and control all of his movements in and about the work, and discharge him ad libitum, unless there is some special agreement which limits his authority.

The statute above quoted is in strict harmony with the general authorities as to what constitutes an independent contractor. The statute is also in harmony with the previous decisions of this court. See *Callahan* v. *Salt Lake City,* 41 Utah, 300, and authorities cited at page 307, 125 Pac. 863. It is not necessary to cite additional authority or to indulge in further comment. We are forced to the conclusion that

the applicant Skoubye was an independent contractor at the time of the accident in which he was injured, and that as such he was not within the provisions of the Utah Industrial Act.

It is` therefore ordered that the order of the Commission, awarding him compensation for his injury, be vacated and set aside.

WEBER, C. J., and FRICK, J., concur.

GIDEON, J. (dissenting). I am unable to agree that the testimony taken before the Commission does not justify its conclusions.

There is a mass of incompetent testimony found in the record and much contradiction of witnesses on details, but, in my judgment, there is ample testimony, not only by the applicant and his foreman, Mr. Leatham, but by the foreman of Mr. Angel, the contractor, a Mr. Bertoll, to support the Commission's finding that the contractor retained such supervision and control over the work as to bring the applicant within the Workmen's Compensation Act. The mere fact that he was a subcontractor and had the right to employ and discharge men is not conclusive of his right to compensation. The statute does not so state. The right to compensation is dependent, not upon the fact of the applicant being a subcontractor, but upon the other fact that the work he was doing was under the supervision of the contractor. That seems to be the test that the statute has established. This may be a close case, but, in my opinion, there was ample competent testimony before the Commission which justified it in making the award.

CHERRY, J. I concur with Justice GIDEON.