GOGOFF v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5051. Decided February 27, 1931. (296 P. 229.)

*Willard Hanson* and *A. H. Hougaard,* both of Salt Lake City, and *L. Leland Larson,* of Manti, for plaintiff.

*Geo. P. Parker,* Attorney General, and *Bagley, Judd & Ray,* of Salt Lake City, for defendants.

FOLLAND, J.

Certiorari to review an order of the Industrial Commission of Utah denying compensation to plaintiff for injuries resulting from an accident while working at the quarry of the defendant Southern Pacific Company at Lakeside, Utah, The findings and decision of the commission were as follows:

"Alex Gogoff, the applicant herein, on the 26th day of March, 1929, was employed by Murray E. Burns. Murray E. Burns had a contract with the Southern Pacific Company to drill coyote holes at Lakeside and Lucin, Utah. Murray E. Burns was an independent contractor, as defined in section 3110 of the State Industrial Act. He was not subject to the rule or control of the employer and was engaged only in the performance of a definite job, and was subordinate to the employer only in effecting a result in accordance with the employers' design. Murray E. Burns, on the 26th day of March, 1929, on the date that Alex Gogoff was injured, had in his employ only two workmen and was not subject to the Workmen's Compensation Law.

"The applicant has not sustained his burden of proving that on March 26th, 1929, he was employed by the Southern Pacific Company.

"Wherefore, it is ordered, that applicant's claim for compensation be and the same hereby is denied."

There is no dispute as to the happening of the accident, or the nature or extent of the injuries, or, if Burns was an independent contractor, that he had only two men working for him, Gogoff and one other, and that he did not have these men covered by compensation insurance. A contract in writing was entered into between the company and Burns. It is plaintiff's contention that, under the provisions of this contract, such material supervision and control over the contractor was retained as to render the contractor entirely dependent with respect to the work to be performed, and that Burns was a mere agent of the company in the employing of plaintiff, and that the relation of master and servant existed between plaintiff and the company which entitled him to compensation for the injuries sustained. The precise question for decision is whether or not plaintiff was an employee of the company, and the

answer turns on whether or not Burns was an independent contractor.

The Southern Pacific Company operates a quarry at Lakeside, Utah, from which it obtains rock which it uses for ballast for its roadway across the Great Salt Lake. Coyote holes are tunnels of fifty feet or more in length, approximately seventy feet apart, driven into the face of the mountain. Tees are tunnels driven at right angles to the first tunnels, at about the end thereof. They are used for the purpose of blasting down large quantities of rock from the mountain side. It has been customary for the company to let contracts for the drilling of coyote holes, believing that it coud get the work done cheaper and quicker than it could with its own employees. One person, other than Burns, was operating at Lakeside under a similar contract during the spring and summer of 1929. The relationship between Burns and the company was established by the contract. No other or different employment was shown to exist. While he had formerly worked for the company as civil engineer and foreman, he had been employed elsewhere for about a year previous to the making of the contract in question. Burns sought and obtained the contract, and continued to work under it until the end of the summer of 1929. After the accident to Gogoff, he employed more than two men and kept them insured in the state insurance fund. After negotiating for the contract and before it was signed, Burns wired to Charles Kupoff in Montana, requesting him to come to Ogden, and bring another workman with him to go on this work. Kupoff brought Gogoff with him, and arrived in Ogden March 23. Both men were experienced in drilling and blasting. Burns employed them, and agreed to pay them 75 cents an hour. The contract with the company was signed by Burns on Sunday, March 24, but it was dated March 25, 1929. Burns and the two men went to Lakeside on March 25, where they worked that day and part of the next, when the accident happened, caused by a "missed hole." Burns, Gogoff, and

Kupoff were all injured and were taken to the Dee Hospital at Ogden.

The contract, which is a printed form with typewritten additions, provided that the contractor shall "perform the work of drilling coyote holes, tees and pockets in locations to be designated by Railroad at Lakeside and Lucin, Box Elder County, and Palisade, Eureka County, Nevada." The work was to be commenced immediately and continue until October 31, 1929, but the contract could be terminated by either party by giving three days written notice to the other party. The contractor agreed to furnish all labor so as to satisfactorily perform the work. The coyote holes were to be not over 3 feet in height by 2 feet 6 inches in width, nor less than 2 feet 6 inches in height by 2 feet in width; payment to be made by the railroad at the rate of $3 per lineal foot where main drift does not exceed 50 feet and tees and crosscuts do not exceed 30 feet each way, and for each additional 10 feet the price to increase 50 cents per lineal foot, and for drilling pockets the rate was 75 cents per cubic foot; payment to be made twice a month, based on railroad engineer's measurement of work done and upon proof that employees of contractor have been paid. The contractor agreed to save the railroad harmless from and against all claims, loss, damage, injury, and liability resulting directly or indirectly from the work covered by the agreement, and to perform the work in strict conformance with the provisions of all applicable federal and state enactments with reference to employers' liability, workmen's compensation, and workmen's insurance, and hold the railroad harmless from any claim or liability resulting from such enactments. No extra work to be done, unless authorized in writing, and then to be paid on regular daily wage basis. The railroad agreed to furnish all tools, equipment, powder, fuse, and other materials necessary to the work, and also free transportation for the men. The contractor was to find sustenance for his men. The contractor agreed to fully perform the agreement to the satisfaction

of the railroad and in strict conformance with the specifications, and to do the several parts of the work at the places and in such order as the railroad might direct, and to keep a competent man on the premises during working hours to receive instructions from the railroad and to superintend the work.

The instrument, on its face, purports to be an agreement with an independent contractor, and the evidence shows that both Burns and the officials of the company, responsible for the contract, believed in good faith that it created the status of an independent contractor.

The statute, Comp. Laws Utah 1917, § 3110, as amended by Laws Utah 1919, p. 156, c. 63, defines who are independent contractors as follows:

"Where any employer procures work to be done wholly or in part for him by a contractor over whose work he retains supervision or control, and the work so procured to be done is a part or process in the trade or business of said employer, then such contractor and all persons employed by him, and all subcontractors under him, and all persons employed by any such subcontractors, shall be deemed, within the meaning of this Section, employees of such original employer. Any person, firm or corporation engaged in the performance of work as an independent contractor, shall be deemed an employer within the meaning of this Section. The words 'independent contractor,' as herein used, is defined to be any person, association or corporation engaged in the performance of any work for another, and while so engaged, is independent of the employer in all that pertains to the execution of the work is not subject to the rule or control of the employer, is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design."

This section has been construed by this court in several cases, wherein it is held that an independent contractor is one who is under contract to render service or do work for another according to his own method, means, and manner of doing the work and without being subject to the control, direction, or supervision of such other, except as to the result of the work or service. *Dayton* v.

*Free,* 46 Utah 277, 148 P. 408; *Angel* v. *Industrial Commission,* 64 Utah 105, 228 P. 509; *Ludlow* v. *Industrial Commission,* 65 Utah 168, 235 P. 884; *Stricker* v. *Industrial Commission,* 55 Utah 603, 188 P. 849, 19 A. L. R. 1159; 14 R. C. L. 67. Another or additional test approved by this court is that one is an independent contractor when he can employ others to do the work and accomplish the contemplated result without the consent of the contractee. *Ludlow* v. *Industrial Commission,* supra; 14 R. C. L. 71. Other elements indicating that Burns was an independent contractor are that he not only had control over the method of doing the work, and could employ such labor as he chose, but he was to be paid so much a foot for work completed, while he paid his employees at so much an hour, which he must pay out of the footage price paid him by the company. Burns was master of his time, and could work or not as he saw fit—he could have had gangs of men at work at several places and could himself merely supervise the job. He could work one, two, or three shifts a day, or he and his men could work longer or shorter hours, as he chose. *Angel* v. *Industrial Commission,* supra.

We are unable to find anything in the contract which reserves to the company the right to control the manner or method of doing the work of drilling the coyote holes, or of exercising any control over the men employed by the contractor. The contract could be terminated by the giving of three days' notice in writing, but the company had no right to employ or discharge the men who were to work under Burns, or to control them as to when or how they performed their work. The nature and quality of the work was definite. The "definite job or piece of work" to be done under the contract was the drilling of coyote holes, tees, and pockets.

The company reserved the right to indicate the particular places in the quarry where the coyote holes, tees, and pockets should be drilled, and the order or sequence in which they should be drilled, and the right to reject the work if

not done according to specifications. This was necessary that there be proper coordination of the various parts of the work being done by the company and other contractors at the quarry. This is not incompatible with the theory that Burns was an independent contractor. Nor is his status changed because the contract provided for no definite number of coyote holes, or because the contract might be terminated on three days' notice. *Stricker* v. *Industrial Commission*, supra; *Good* v. *Johnson*, 38 Colo. 440, 88 P. 439, 8 L. R. A. (N. S.) 896; *Powell* v. *Virginia Construction Co.*, 88 Tenn. 692, 13 S. W. 691, 17 Am. St. Rep. 925; *Helton* v. *Tall Timber Lumber Co. of La.*, 148 La. 180, 86 So. 729.

The order of the commission is affirmed, without costs.

STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J., dissents.