## LUKER SAND & GRAVEL CO et al. v. INDUSTRIAL COMMISSION et al.

No. 5390.  Decided June 22, 1933.  (23 P. [2d] 225)

*Bagley, Judd & Ray,* of Salt Lake City, for plaintiffs.

*Joseph Chez,* Attorney General, and *Grover A. Giles,* Deputy Attorney General, for defendants.

MOFFAT, Justice.

This case is before the court on a writ of certiorari to review a decision of the Industrial Commission of Utah. On the testimony hereinafter set forth, the Industrial Commission made findings. Among the findings the following statements occur:

"That Lucian Osment, on the 9th day of September, 1931, was employed by the Luker Sand & Gravel Company; that on said date the Luker Sand & Gravel Company had in its employe three or more workmen and had procured Workmen's Compensation insurance with the State Insurance Fund. That on the said date the said Lucian Osment was operating a truck under a verbal agreement with W. W. Hobbs, the said Lucian Osment was to pay one-half of the expenses in operating the truck and to share 50/50 in the earnings of such operation. Payment was made by the Luker Sand & Gravel Company on the basis of loads hauled. Mr. Hobbs' truck operated as other trucks on the job, worked when hauling was needed and laid off when no deliveries were required. The Luker Sand & Gravel Company retained direction and supervision over Lucian Osment and he was subject to their directions and control."

## The Industrial Commission ordered that

"the Luker Sand & Gravel Company and/or (whatever that hybrid combination "and/or" may mean) the State Insurance Fund pay into the State Treasury of Utah to the credit of the Employees' Combined Injury Benefit Fund the sum of $864.24, as provided in section 3140, subsection 1 of the State Industrial Act [as amended by Laws 1921, c. 67], for the death of Lucian Osment."

The petitioners are the Luker Sand & Gravel Company and the State Insurance Fund. It is the contention of the petitioners that Lucian Osment was not an employee of the Luker Sand & Gravel Company at the time of his death. They allege that he was an "independent contractor." The petitioners applied for a rehearing, which was denied. The petition for this writ of review was filed in time.

Counsel for petitioners and counsel for defendants agree as to the issue, and counsel for defendants accept the statement of the testimony made by petitioners: It is agreed that the only issue or question involved is whether Lucian Osment was an employee of the Luker Sand & Gravel Company or an "independent contractor" at the time of his accidental death.

During the summer of 1931, the federal government through its contractor was constructing the Veterans' Hospital in Salt Lake City. The sand and gravel was being furnished by the Luker Sand & Gravel Company from its gravel pit located near Becks Hot Springs in the northerly part of Salt Lake City. While Lucian Osment was hauling gravel, the truck he was driving got out of control on a hill and tipped over and killed him.

Only the testimony regarding the question in issue as above stated will be referred to.

Concerning the matter, Mr. Hobbs testified in substance that he attempted to get a contract from the Luker Sand & Gravel Company to haul all the sand and gravel for the Veterans' Hospital job. Mr. Hobbs was unsuccessful in this. He was told there were others who had been working for the company and that it would not be justice to displace those having seniority. He was told that, if he had some trucks, that he could put on, he might do so.

It appears that on Monday, September 7, 1931, Mr. Hobbs put one of his trucks on the job hauling sand and gravel from the gravel pit to the Veterans' Hospital. About noon this driver, who had picked up or became acquainted with

Lucian Osment, drove into Mr. Hobbs' place, bringing Lucian Osment with him. This driver advised Mr. Hobbs that he had secured a better job and desired to quit.

Osment said he was a truck driver and was seeking employment. Hobbs explained to Osment that he could not guaranty him anything; that the matter of how much work he did would determine how much wages he would get; that under the conditions he could take the truck and haul sand and gravel; that the gravel company would pay 50 cents a yard; and that they, Hobbs and Osment, would cut fifty-fifty, each to furnish half the gas and oil.

Hobbs owned the truck, and after lunch went over part of the trip with Osment to show him the route, and told him to follow the other trucks. He told him where to go and that the people at the pit would instruct him where to go and how much of the sand and gravel to haul.

Osment worked Monday and Tuesday, and was working Wednesday when the accident happened. After his death, Hobbs received a check for about $20 from the Luker Sand & Gravel Company. The truck was loaded with sand at the time of the injury. Its destination was the Veterans' Hospital. It came from the Luker Sand & Gravel Company pit. Osment was killed at the corner of Almond street and West Second North street, Salt Lake City.

The Luker Sand & Gravel Company had nothing to do with the placing of Osment on the truck.

On Tuesday night Osment brought the truck home and informed Hobbs that the gravel company had instructed him to put some higher side boards on, that he was not carrying enough. They bought two two by sixes and put on the truck.

Sometimes the gravel company would direct the truck drivers to Fort Douglas or the Miners' Hospital. Whether the driver wanted to go was wholly the business of the driver. The price varied per yard for different distances. Hobbs said he could discontinue the employment at any time.

The gravel company's only business was to direct where to load and unload.

Mr. Gordon Taylor Hyde, president of the Luker Sand & Gravel Company, testified that his company had the contract to furnish sand and gravel for the Veterans' Hospital job at 95 cents a yard; that he told Mr. Hobbs that he would be glad to use his trucks any time he could; that he could not give him the exclusive contract; that the company had a number of men who had been with them a long time; that all men were paid 50 cents a yard based on delivery point; that, if he cared to put his trucks to work on the same basis, he might do so; that the trucks were checked as they arrived by the government inspector on the job; that the company did not direct the truck driver as to the route to take; that the only man the company met in connection with the deal was Mr. Hobbs; that the company had never met or discussed the question with any one else, and this was the first experience with Mr. Hobbs; that there was a foreman at the pit; that the company had no trucks; that the company expected this man to put in his time; that they did not expect the men would confine their work to this company; that the men who were working for them had the privilege of taking contracts from anybody; but in emergencies it was expected the truckmen would take care of the company work. Contracts could be terminated or new ones made at any time. Payment was made on the basis of material delivered. The company had no control of trucks on the outside. Payment was made on the basis of receipted delivery slips brought to the office. That the company had nothing to do with telling the truck drivers where to dump the load, and could not tell the gravel men to haul to one place or another, although the price per yard differed, as the company had no jurisdiction over the truck. Mr. Hyde also testified that he did not know, nor had he talked to, Lucian Osment.

It appears from this undisputed testimony that the Sand & Gravel Company did not employ Osment. None of the

officers or agents of the company had ever talked to Osment about his employment or directed him in any way therein. Mr. Hobbs owned the truck, and the sand and gravel hauled for the company was on a yardage basis, in pursuance of the understanding between Mr. Hobbs and the company on the one hand and between Mr. Hobbs and Mr. Osment on the other.

We have examined the record carefully to determine in what way or manner the Sand & Gravel Company had the right to control the manner or method of doing the work, upon what basis it could be said that Mr. Hobbs had any authority direct or by implication to employ any one for the Sand & Gravel Company. We have found none. There is no evidence in the record that the Sand & Gravel Company ever knew or interviewed or gave any directions or orders to Osment at any time. Having found no direct or implied authority for Mr. Hobbs to employ any one on behalf of the Sand & Gravel Company, there is the same absence of any act or communication tending to establish an implied ratification. Nor is there any claim or suggestion that Hobbs himself was an employee of the Sand & Gravel Company.

That Lucian Osment was not an employee of the Sand & Gravel Company is manifest. That he was an independent contractor employed by Mr. Hobbs seems equally manifest. In no event could Osment's relationship to the Sand & Gravel Company be more intimate than that of Hobbs himself.

Before the passage of the Workmen's Compensation Act, a number of decisions growing out of negligence cases had been made wherein the elements that distinguish an independent contractor from an employee were considered. Many cases have been decided by this court which have approved the principles and distinctions in those earlier cases.

Since 1912, when the case of *Callahan* v. *Salt Lake City,* 41 Utah 300, 125 P. 863, 865, was decided, the question of

when one is an employee or an independent contractor has been before the court. In that case the contract, in addition to the general terms, contained many special provisions and specifications concerning the work to be performed under the contract, among which were: "Whenever the contractor is not present at the work and at such time instructions become necessary the board of public works or the city engineer may give the necessary orders to the superintendent or foreman in charge of the work; that any work which is defectively done shall be removed by the contractor whenever directed to do so by the board aforesaid; that the contractor shall employ suitable mechanics and if any person employed by him is incompetent, disorderly, or disobedient to the board of public works or to the city engineer such person shall be discharged by the contractor upon request of said board or engineer; that the contractor shall commence work at such place as he may be directed and shall conform to such directions as the board shall give with respect to the order and time in which different parts of the work shall be done; that the contractor shall comply with the ordinances of the city in so far as they may affect his employees or the disposition or transportation of materials and shall assume all liability, and agrees to indemnify the city against all loss or damage that may be occasioned by the doing of the work contemplated by the contract."

In holding that the contractor was an "independent contractor," the court said:

"While, as may well be expected, the cases as to when and under what facts and circumstances a person who agrees to perform certain work or to erect certain structures is an independent contractor to whom the rule of respondeat superior does not apply are far from harmonious, yet, in our judgment, Mr. Moran comes squarely within the rules laid down in the following well-considered cases in which it is held that, under facts and circumstances not distinguishable in principle from those in the case at bar, the contractors were independent contractors for whose negligence the contractees were not responsible: *Uppington* v. *City of New York*, 165 N. Y. 222, 59 N. E. 91, 53 L. R. A. 550; *Charlock* v. *Freel*, 125 N. Y. 357, 26 N. E. 262; *Ege* v. *Phoenix Brick, etc., Co.*, 118 Mo. App. 630, 94 S. W. 999; *Alabama M. Ry. Co.*

v. *Martin Bros.*, 100 Ala. 511, 14 So. 401; *Prowell* v. *Waterloo*, 144 Iowa 689, 123 N. W. 346; *Harding* v. *City of Boston*, 163 Mass. 14, 39 N. E. 411."

In the case of *Ludlow* v. *Industrial Commission*, 65 Utah 168, 235 P. 884, 888, *Callahan* v. *Salt Lake City*, supra, and the case of *Dayton* v. *Free*, 46 Utah 277, 148 P. 408, are referred to and approved. In the Ludlow Case Mr. Justice Thurman, speaking for the court, says:

"An independent contractor can employ others to do the work and accomplish the contemplated result without the consent of the contractee, while an employee cannot substitute another in his place without the consent of his employer,"

and Mr. Justice Gideon in concurring with Mr. Justice Thurman in affirming the award said:

"An independent contractor is one who has entered into a contract or upon employment to render service or do work for another, according to his own method, means, and manner of doing the work, and without being subject to the control, direction, or supervision of such other, except as to the result of the work or service."

In the instant case the drivers of the truck engaged in hauling sand and gravel were changed during the noon period on Monday preceding the accident on Wednesday, and, in so far as the record discloses, no one connected with the Luker Sand & Gravel Company was consulted about the matter. Mr. Hobbs released the first driver because he had secured a better job and put Osment to work. The terms of Osment's employment were fixed by Hobbs and Osment. That the sand and gravel should be delivered at the Veterans' Hospital with reasonable expedition and as required by the government contractors as to quantity was all the Sand & Gravel Company was interested in. When the employer retains supervision and control of the work to be performed, the workmen under him are employees. *Angel* v. *Industrial Commission*, 64 Utah 105, 228 P. 509. In this case Comp. Laws Utah 1917, § 3110, as amended by Laws of Utah 1919, c. 63, is con-

strued, and the construction there made has been followed in subsequent cases and the doctrine of the earlier cases affirmed. *Stricker* v. *Industrial Commission,* 55 Utah 603, 188 P. 849, 19 A. L. R. 1159; *Gogoff* v. *Industrial Commission,* 77 Utah 355, 296 P. 229.

The following cases are cases in which truck hauling, usually upon a yardage or yardage and mile basis, have laid down rules if not in the same words at least in substance the same as laid down by this court. In some of the cases the facts are strikingly analogous; in each of them the applicant was held to be an independent contractor and not an employee. *Porter Construction Co.* v. *Burton,* 156 Okl. 72, 8 P. (2d) 64; *Maryland Casualty Co.* v. *State Industrial Commission,* 148 Okl. 204, 298 P. 275; *Wagoner* v. *A. A. Davis Const. Co.,* 112 Okl. 231, 240 P. 618.

Under the California Workmen's Compensation Act of 1917, where an owner of a truck engaged to haul hay for another without any agreement except "to go out and haul hay and keep at hauling it and we will not make any definite arrangement, but when you are through hauling, why * * * you will not be dissatisfied with the terms of settlement," was held to be an independent contractor. *Flickenger* v. *Industrial Acc. Comm.,* 181 Cal. 425, 184 P. 851, 852, 19 A. L. R. 1150.

The fact that one's wages may be measured by time, by the piece, or by some other unit of measurement is not alone controlling as to whether one is an employee or an independent contractor. As said in *New York Indemnity Co.* v. *Industrial Acc. Comm. of California,* 80 Cal. App. 713, 252 P. 775, out of factors involved in the solution "one of the best tests to determine whether the relation is that of an independent contractor or that of employer and employee is the right of control." It is not the fact that an employer may have interfered, but whether he has the right to interfere.

Counsel for defendants in argument have said that they "do not see any application" of certain cases, cited in plain-

tiffs' brief. That may be counsels' misfortune; but that does not contribute help to the court in the solution of the question at issue. Counsel has also submitted a number of excerpts from cases cited in a note to the text on the topic of "Independent Contractor" from Honnold on Workmen's Compensation." The excerpts submitted are from the California Industrial Accident Compensation Decisions and are not helpful. The reports referred to are not available, we have therefore not been privileged to examine the cases. The excerpts from one of the cases seems to be sufficiently analogous from what is stated that we should have been glad to examine and discuss it had it been available. The cases could not be considered as an authority in any event, instructive or helpful as an examination of them might have been. All of the cases cited by defendants, the reports of which are available, are distinguishable from the case before us on the facts.

Human relations are so variable that it is not possible to lay down a rule or state of facts that will govern all cases. We know of no better rule than that already laid down by this court and herein approved.

Whether or not one engaged in a service for another is an employee or an independent contractor, within the meaning of the Industrial Act, is a jurisdictional question, presenting a situation which requires this court to determine the status from the facts submitted from a preponderance of the evidence and apply the facts so found to the law of the case. *Angel* v. *Industrial Commission,* 64 Utah 105, 228 P. 509; *Industrial Commission* v. *Evans,* 52 Utah 394, 174 P. 825; and *Miller & Lux* v. *Industrial Acc. Comm.,* 179 Cal. 764, 178 P. 960, 7 A. L. R. 1291.

We are of the opinion that the deceased, Lucian Osment, was not an employee of the Luker Sand & Gravel Company at the time of the accident from which his death was the result.

It is therefore ordered that the order of the commission requiring the Luker Sand & Gravel Company and the state insurance fund, or either of them, to pay into the state treasury to the credit of the employees' combined injury benefit fund, be vacated and set aside.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.