## MURCH BROS. CONST. CO. et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5479.   Decided October 16, 1934.   (36 P. [2d] 1053.)
Rehearing Denied January 7, 1935.

*Louis H. Callister,* of Salt Lake City, for plaintiffs.

*Joseph Chez,* Atty. Gen., *A. H. Nebeker,* of Salt Lake City, and *John A. Sneddon,* of Ogden, for defendants.

EPHRAIM HANSON, Justice.

This case comes before this court on a writ of certiorari to review the decision of the Industrial Commission of Utah in awarding compensation to A. L. Cripps for injuries received while working on the United States Forestry Building in Ogden, Utah. There is no dispute as to the happening of the accident and the disability resulting therefrom or the amount of the award. It is conceded by the parties that the only question involved in this proceeding is whether Mr. Cripps was employed by the plaintiff Murch Brothers Construction Company at the time of the accident. There is no specific finding by the Industrial Commission that Cripps was employed by Murch Brothers, nor is there any finding as to who employed him. The only findings of the Commission that have any bearing upon this question are as follows:

"That the Murch Brothers Construction Company was a corporation with its principal place of business in the City of St. Louis, State of Missouri, engaged in the contracting business; that as such it was, under a contract with the United States Government, engaged in the construction of a building known as United States Forestry Service Building at 25th and Adams Streets, in Ogden, Utah; that its duly authorized and legal representative in Ogden City, State of Utah, at the time of the accident was its Superintendent, Wm. B. Duncan. That sometime prior to the 14th day of February, 1933, Murch Bros. Construction Company entered into an agreement in writing with Lou German and one Davis, doing business as German and Davis, whereby German and Davis undertook and agreed to perform certain work and labor in connection with the construction of said Forestry Building; that while said agreement was entered into between Murch Brothers Construction Company and German and Davis no work was ever done under said agreement and thereafter on or about the 14th day of February, 1933, one J. L. Murano was substituted in said agreement for said Davis; and Lou German and J. L. Murano a copartnership became substituted as parties to said contract for German and Davis; that thereafter, and on or about the 25th day of February, 1933, the said J. L. Murano, feeling himself unable to carry out the terms of said contract, withdrew from said arrangement and transferred his interest therein to one Abe Booth of Ogden, Utah; that thereupon Murch Brothers Construction Company accepted Abe Booth as a substitute for J. L. Murano and thereafter looked to Lou German and Abe Booth for the performance of said contract; that subsequent

thereto, and on or about the 23rd day of March, 1933, the said Lou German withdrew from said work, abandoned the same and left the city of Ogden, whereupon Murch Brothers Construction Company accepted the said Abe Booth as the sole party to said contract, and thereafter looked to the said Abe Booth for the performance thereof. The Commission further finds that in the month of December, 1932, Lou German, as an individual was performing certain work and labor in and about the construction of a United States Post Office in the town of Bingham Canyon, Salt Lake County, Utah; that for the purpose of insuring his compensation risk incurred on account of his operation in Bingham Canyon, Utah, the said Lou German applied for and procured from the State Insurance Fund a policy of compensation insurance covering the work then being done by Lou German as an individual at Bingham Canyon, Utah; that said policy of insurance was issued by the State Insurance Fund on the 7th day of December, 1932, and named therein as the assured, Lou German, an individual; that no other policy of insurance was ever issued to Lou German by the State Insurance Fund. That on or about the 15th day of March, 1933, at the instance of Lou German, the applicant, A. L. Gripps, accepted employment in and about the excavation connected with the construction of said Forestry Building upon a basis of seven days per week, eight hours a day, and forty cents an hour; that he continued working in and about said work intermittently until on or about the 27th day of March, 1933; that on the morning of March 27th, 1933, the applicant, A. L. Cripps, was engaged in shoveling soil away from concrete forms in the basement of said Forestry Building and in removing forms which had been prepared to receive concrete; that while so engaged applicant was required to work in a cramped and somewhat distorted position in the course of which he felt something snap in his back in the region of the cervical spine; that he immediately reported his injury to Parley E. Jensen, his immediate superior, but stated he though he could continue work. The Commission further finds that the United States Government does not recognize subcontractors in connection with public work carried on by it, and particularly finds that it does not recognize sub-contractors in the construction of the Forestry Building in Ogden, Utah, and the work in which applicant was engaged at the time of his injury. The Commission further finds that Murch Brothers Construction Company, by the terms of its contract originally entered into between German and Murano, and under which it thereafter looked successively to German and Booth and Abe Booth for performance, pretended to require that German and Murano, copartners, should procure Workmen's Compensation insurance for the purpose of protecting employees engaged in and about the work

covered by said contract for loss on account of injuries arising out of or in the course of said employment; but the Commission finds that Murch Brothers Construction Company did not enforce said provision of said contract; that it did not require German and Murano to procure compensation insurance; that it did not require German and Booth to procure compensation insurance; that it did not require Abe Booth to procure compensation insurance; that it permitted responsibility for the performance of said contract to be shifted frequently from one partnership to another and finally to Abe Booth without regard for the protection of said employees engaged in the work covered by said contract; that on the 27th day of March, 1933, when applicant received the injury hereinbefore described, Abe Booth had procured no workmen's compensation for the protection of applicant, and Murch Brothers Construction Company had wholly failed and negletced to enforce the provisions of said contract requiring the procuring of compensation insurance for the protection of persons employed in and about the construction of said Forestry Building, and subject to the hazards of such work."

From the foregoing findings, the Commission concluded that "Murch Brothers and/or Maryland Casualty Company, its insurance carrier, accepted responsibility for the safety and protection of applicant and other employees so situated," and became liable to pay compensation for the injury sustained by Cripps. Plaintiff and its insurance carrier, Maryand Casualty Company, were ordered to pay the compensation awarded, the doctor's fee, and the attorney's fee. Nowhere in their brief do defendants try to sustain the award upon the conclusion of the Commission above stated. Their whole argument is directed to the point that German and Booth were not independent contractors and applicant Cripps was, therefore, an employee of plaintiff Murch Brothers.

We have carefully examined the record and have found no evidence whatever to the effect that the contract between Murch Brothers and German and Murano, and later German and Booth, was entered into to circumvent the Workmen's Compensation Act or that Murch Brothers by the terms of said contract "pretended to require German and Murano should procure Workmen's Compensation insur-

ance for the purpose of protecting employees engaged in and about the work covered by said contract." Nor do we find any evidence to sustain the Commission's conclusion that Murch Brothers or Maryland Casualty Company, its insurance carrier, accepted responsibility for the safety and protection of the persons employed in the work covered by the said contract, unless it be conceded that the contract with German and Murano, and later German and Booth, did not create the relation of independent contractor.

The evidence, aside from the contract itself may be summarized as follows: Applicant Cripps testified that German hired him to work on the Forestry Building; that he was paid by Abe Booth; that Parley Jensen was his foreman and he reported his injury to Jensen; German told him what his pay would be and the number of hours he was to work; that he was paid through written orders on Booth or by checks made out by German and Booth and cashed by Booth; that Booth was at the job every day and Booth did some hiring of men; that he took all orders from Jensen, his foreman; that German had another job in Bingham Canyon and would spend about half his time in Bingham and about half his time on the Forestry Building job.

Parley E. Jensen testified that he was foreman for German & Booth; that German gave him his orders; that Dr. Strandquist was the doctor for German & Booth; that Jensen was paid by check from Abe Rubens, the timekeeper, signed by German, and cashed by Booth; that he was hired by German, who introduced Murano as his partner; that Cripps was under his (Jensen's) orders; that he took all his orders from German until about March 23, when German disappeared from the job, and after that he took orders from Herman Plewe, who seemed to have charge of the subcontracts; that the only orders he took from Plewe and Duncan, Murch Brothers' agents, were with reference to the specifications.

William B. Duncan, Murch Brothers' agent in charge of the construction, testified that German was a subcontractor;

that Booth took over Murano's part of the partnership; that Booth and wife had signed the partnership's bond; that Murch Brothers paid Booth as the work progressed; that the government does not recognize subcontractors, but "we have a bond with the government and must show all bills paid before governmnet will give a final acceptance"; that when German left, Booth hired Plewe to be superintendent for him; that he did not know what it cost German and Booth to do the job, it was not his business; that he had no right to direct the men engaged in the work covered by the German and Booth contract or to help or assist in that work, though he was in charge of Murch Brothers; that he did not hire Cripps and did not know he was on the job; that he only supervised for the purpose of securing results in accordance with plans and specifications; that he could not discharge any one employed by Booth or German; that German and Booth could come on the job any time they desired and could work as many hours as they desired; that they were paid on estimates; that they could hire men without consulting him as to qualifications and requirements; that he paid Booth and German on estimates, not by the hour or day; that neither Cripps, Booth, Murano, German, nor any of the men working for the subcontractors, was on pay roll of Murch Brothers; that German and Murano were partners; that in February, Murano withdrew and Booth was substituted for him and took his place; that in March, German withdrew and he looked to Booth as the subcontractor, but that Murch Brothers have never released German from liability; Booth was accepted as the only subcontractor on or about April 1st.

Mr. Hennessey, who was working with Cripps, testified that he was referred to Murano by Booth, and Booth told him he could go to work; that Booth paid him.

Abe Booth testified Murano assigned his interest to him; that he had to go on with the contract as he had signed the bond; that he never took over German's interest.

The contract referred to in the foregoing evidence was in writing and was introduced in evidence. It was entered into February 14, 1933, by Murch Brothers as contractor and Lou German and J. L. Murano, a partnership, as subcontractor. It provided that:

"Sub-contractor shall furnish all necessary labor, tools, plant equipment, hoist and scaffolds and all other incidental items thereto, for the installation of all plain and reinforced concrete work, all cement finish work, the placing of reinforcing steel, wire mesh, all anchors built into the concrete, the hand excavation required in connection with the foundation of said building, including all outside grading, removal of old sidewalks, curbs, etc., installation of granite curbs; the labor required for all rough and finish carpenter work, installation of hardware, all Kalamein doors, metal frames and borrowed lights, drain, tile, back filling, etc., and the cement plaster on exterior walls over waterproofing, all as shown on the drawings and called for specifically in the specifications."

The contractor was to furnish all the materials. The subcontractor agreed to pay the prevailing wage scale. The work was to be done under the direction of the architect. The total contract price for this work was $18,700, to be paid as the work progressed in semi-monthly payments, based upon the amount of work done, less 10 per cent retained until final completion. Defendants refer to and rely upon the following provisions of the contract as reserving in Murch Brothers such material supervision and control over the work as to make the subcontractor, German, and Murano and Booth, merely an employee of Murch Brothers so that Cripps was an employee of the latter:

"The work included in this contract is to be done as directed by the contractor to the end that the Contractor's Progress Schedule may be maintained and the building completed as stated above. If the subcontractor delays the progress of the work, through its own act or neglect, then it shall pay the contractor the sum of $10.00 per day as liquidated damages."

"It being agreed that work will be carried on as required by contractor, promptly and efficiently, and without delaying other branches of the work; and if necessary, certain parts of the work will be prosecuted in preference to others."

"The Sub-contractor hereby agrees to save and indemnify and keep harmless the Contractor against all liability, claims, judgments or demands for damages arising from accidents to persons or property occasioned by the Sub-contractor, his agents or employees, and the said Sub-contractor will defend any and all suits that may be brought against the Contractor on account of any such accidents and will make good to, and reimburse the Contractor for any expenditures that said Contractor may make by reason of such accidents.

"In order to insure the fulfillment of the foregoing, the Sub-contractor hereby agrees to carry Employers and Public Liability Insurance also such insurance as is required to cover Workmen's Compensation in States where Workmen's Compensation laws are in force.

"The Sub-contractor also agrees to furnish the Contractor with suitable evidence that such insurance has been taken out, and will continue in force until the completion of this work, and if the Sub-contractor should sublet any of this work to a third party, he agrees to see that the said third party shall carry insurance, as mentioned above. An acknowledgment of such insurance from companies issuing same, shall accompany and become a part of this contract.

"The Contractor reserves the right to withhold the monthly estimates due the Sub-contractor under Article IX until such Insurance Certificate or Policy required under this Article have been furnished."

"The Sub-contractor shall not employ any workman whose employment on the building or improvement may be objected to by any of the other Sub-contractors or their employees or the Contractor. None but *union labor affiliated with A. F. of Labor shall be employed on work covered by this contract.*"

It is clear from the above resume of the oral evidence that there was nothing done by the parties, aside from the contract itself, that would show that Cripps was an employee of Murch Brothers. All the oral evidence points to the conclusion that he was an employee of German and Booth. Counsel for both parties seemingly concede this, as all their argument is directed to a construction of the written contract. It, therefore, becomes necessary to pass upon the effect to be given to said contract.

It has been decided by this court in the case of *Luker Sand & Gravel Co.* v. *Industrial Commission* (Utah) 23 P.

(2d) 225, 229, in conformity with prior decisions of this court, that:

"Whether or not one engaged in a service for another is an employee or an independent contractor, within the meaning of the Industrial Act, is a jurisdictional question, presenting a situation which requires this court to determine the status from the facts submitted from a preponderance of the evidence and apply the facts so found to the law of the case. *Angel* v. *Industrial Commission*, 64 Utah 105, 228 P. 509; *Industrial Commission* v. *Evans*, 52 Utah 394, 174 P. 825, and *Miller & Lux* v. *Industrial Acc. Comm.*, 179 Cal. 764, 178 P. 960, 7 A. L. R. 1291."

Section 42-1-40, R. S. Utah 1933, defines the term "independent contractor" to be:

"Any person engaged in the performance of any work for another, who, while so engaged, is independent of the employer in all that pertains to the execution of the work, is not subject to the rule or control of the employer, is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design."

This section of the staute has been construed by this court in several cases. The effect of these decisions has been summarized, so far as a single, all-inclusive summary could be made, by this court in the case of *Gogoff* v. *Industrial Commission*, 77 Utah 355, 296 P. 229, 231, in the following language:

"An independent contractor is one who is under contract to render service or do work for another according to his own method, means, and manner of doing the work and without being subject to the control, direction, or supervision of such other, except as to the result of the work."

We are of the opinion that the contract here in question must be construed as making the subcontractor an independent contractor, with the necessary consequence that Cripps was not an employee of Murch Brothers. Defendants first contend that the provision that the work is to be done "as directed" by the contractor provides for a control of the methods and means of doing the work. But it is clear from

the provision itself that the direction intended was only such as would insure completion of the building on time and so had reference only to the general result of the work. In the case of *Stricker* v. *Industrial Commission*, 55 Utah 603, 188 P. 849, 19 A. L. R. 1159, a somewhat similar provision was inserted in the contract, but this did not prevent the creation of the relation of independent contractor. In the case of *Dayton* v. *Free*, 46 Utah 277, 148 P. 408, 411, the contract reserved the right to make "changes in the work contracted for, or in its location or position either in line or grade which it may deem expedient or which the engineer of the company may direct." Notwithstanding such provision the relation of independent contractor was held to exist and such provision did not reserve the right to direct, control, or superintend the work. The case of *Callahan* v. *Salt Lake City*, 41 Utah 300, 125 P. 863, also is in point on this question.

"The status of independent contractor is not affected by the mere fact that the employer may supervise and direct in matters necessary to a faithful performance of the contract." *Ludlow* v. *Industrial Commission*, 65 Utah 168, 235 P. 884, 888.

The same effect must be given to the provision of the contract that the work shall be carried on as required by the contractor promptly and efficiently. This provision reserved no right to control the manner, method and means of doing the work. *Stricker* v. *Industrial Commission*, supra.

The provision requiring the subcontractor to furnish bond to insure fulfillment of the contract, to protect the contractor from claims for injuries, and to provide workmen's compensation, cannot be said to be a recognition by the parties themselves that the subcontractor was not an independent contractor. Indeed, the necessary inference is that such provisions are more consistent with the relation of independent contractor than with the relation of employee, for, as pointed out in the note found in 20 A. L. R. at page 789, such provision is commonly inserted in independent con-

tracts and seldom in contracts of hiring and service. In the cases of *Dayton* v. *Free, Stricker* v. *Industrial Commission, Callahan* v. *Salt Lake City,* and *Gogoff* v. *Industrial Commission,* supra, similar indemnity provisions were contained in the various contracts; but this court held in all of those cases that the relation of independent contractor existed.

The right to object to the workmen employed by the subcontractor and the provision that only union labor affiliated with the A. F. of Labor shall be employed, reserved no power to control the method, manner, or means of doing the work. The first part of such provision clearly indicates that the subcontractor was to do the employing. But to insure competency, harmony, and the necessary co-ordination between the various subcontractors and their employees, the right to employ was limited. No right to discharge after employment was reserved. Similar provisions are found in the contracts involved in the cases of *Dayton* v. *Free* and *Callahan* v. *Salt Lake City,* supra. The fact that only men affiliated with the American Federation of Labor could be employed would not alter the situation. It is not shown that such limitation would so restrict and control employment, because of the lack of available members of that organization or because of some other reason, as would reserve any power to control the method, manner or means of prosecuting the work.

From the evidence, oral and written, it appears that neither German nor Booth were required to do the work themselves, but it was contemplated they were to employ others to do the work; that such employees were to be, and in fact were, paid by German and Booth; that German and Booth were to furnish all the labor and all the tools and equipment required for the performance of the work contracted; that German and Booth were to be paid for the work as a whole, while they were to pay their employees the prevailing wage scale out of the moneys paid them; that German and Booth need not be present on the job, but

could come and go as they pleased and they need only supervise the job, and could and did carry on other work and business at the time this particular work was under way; that neither they nor any of their employees were carried on the books or pay rolls of Murch Brothers as employees; that the work was to be completed by a specified date, with a penalty for failure to so complete it; that no control was in fact exercised over any of the employees of German and Booth by Murch Brothers and no control was in fact exercised over the method, means, or manner of performing the work, except to see that it conformed to the specifications. While, as stated in the case of *Luker Sand & Gravel Co.* v. *Industrial Commission,* supra, "Human relations are so variable that it is not possible to lay down a rule or state of facts that will govern all cases," nevertheless it has been judicially determined by the cases herein cited and by other decisions collected in the extensive note in 20 A. L. R., beginning at page 684, that all of the foregoing are elements indicating the relation of independent contractor. Many of the elements referred to above appeared in the case of *Angel* v. *Industrial Commission,* 64 Utah 105, 228 P. 509, and were there held to be pertinent in arriving at the decision therein made.

We are of the opinion that the applicant, A. L. Cripps, was not an employee of Murch Brothers Construction Company, and that the latter had not accepted responsibility for his safety at the time he sustained his injuries. It is therefore ordered that the order of the Industrial Commission requiring Murch Brothers Construction Company and Maryland Casualty Company, or either of them, to pay compensation to Cripps and to pay his doctor's and attorney's fees, be, and the same hereby is, vacated and set aside.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and MOFFATT, JJ., concur.