EWER et al. v. INDUSTRIAL COMMISSION et al.

No. 7091. Decided February 20, 1948. (189 P. 2d 959.)

See 71 C. J., Workmen's Compensation Acts, sec. 919. Tests of independent contractor relationship in the field of workmen's compensation and social security acts, see note, 134 A. L. R. 1029.

*Young & Bullen* and *George M. Bell,* all of Logan, for plaintiff.

*Grover A. Giles,* Atty. Gen., *George D. Preston,* of Logan, and *Moyle, McKay, Burton & White,* of Salt Lake City, for defendants.

PRATT, Justice.

This is an industrial accident case in which the issue is as to whether or not the deceased was an employee or an independent contractor. The Industrial Commission held that he was not an employee but was an independent contractor. The Commission cited the case of *Gogoff* v. *Industrial Commission et al.*, 77 Utah 355, 296 P. 299, apparently to support its decision.

The facts of the present case are:

James A. Neff, a contractor of Logan, Utah, was building a small apartment for himself. He wanted sewer connections with the City of Logan. He visited the City to get permission to connect up with the city sewer, and agreed that he would have the trench dug and the pipe laid, the city to furnish the pipe. The city required that a licensed plumber do the pipe laying. As a result Mr. Neff agreed with the deceased, Wayne Ewer, a licensed plumber, approved by the City, that Ewer would lay the pipe for $1 per foot. Mr. Neff had the trench dug, a ten foot deep trench, by one Fred Klopper with a power shovel at 50c per foot. He also got the pipe from the City; and Mr. Ewer started work pipe laying. Mr. Ewer employed and paid one Hansen to assist him, and also had his son Reed Ewer helping him. Nothing was said between Neff and Ewer as to such assistance. During the course of the pipe laying the use of a jack hammer and compressor became necessary to cut through a certain walk. Mr. Ewer rented these instruments together with an operator to operate them from the Ace Raymond Construction Company, for which he, Ewer, was billed the sum of $10. Nothing was said between Neff and Ewer as to this renting or the $10. The trench became dangerous from cracking and Mr. Neff warned both Ewer and his assistant Hansen of the danger. Pursuant to the suggestion of a City employee, Neff obtained jacks and a board to block up the walls of the trench. Ewer desired an immediate backfilling of the trench and a blinding of the pipe as a protection against a collapse; so Neff with some of his own employees

commenced that blinding and backfilling with a shovel and also a truck of his own and a scraper belonging to Ewer. Ewer helped some with the backfilling, as did also a neighbor who was interested in the trench. Neff did not carry Ewer on his payrolls as an employee nor did he make any salary deductions from the amount paid the estate of Ewer for the work done up to the time of the accident. Ewer and his assistant started work at 8:00 a. m. each day but not by reason of anything said to them by Neff. On one occasion Ewer said he had to take his wife to the doctor, and left for that purpose. The record does not show that this leaving was discussed with Neff. Ewer did not maintain a regular plumbing shop, but stored his tools in an old milk house on his father's farm. He was new in the plumbing business, having been at it some six months. His contract with Mr. Neff was oral. Such few plumbing tools as were necessary for him to have in laying the pipe, he furnished.

Mr. Ewer was killed by a cave-in of the trench, at a time when he was in the trench working on the pipe.

These facts we think clearly preponderate in favor of the decision of the Commission to the effect that Ewer was an independent contractor as to the laying of the pipe for $1 per foot. There is no showing of supervision of Ewer's work by Mr. Neff. The latter seemed to recognize Ewer could hire whom he pleased, or rent what equipment he pleased to aid in the work. No time was fixed for Ewer to work. The contract was for a definite piece of work, which was contracted for upon a basis of so much per foot rather than on a salary or time basis. Mr. Ewer seemed to recognize his independence when he walked away from the job for family reasons leaving his assistant working there. Furthermore his assumption of the right to employ others, or rent equipment is additional evidence of his recognition of that independence. No doubt the Commission's citation of the *Gogoff case* was induced by the fact that in that case the effect of the power of the contractor to employ assistance is discussed along with other matters as supporting that independence.

We do not think that the fact that all parties present, including Mr. Ewer worked in the backfilling and pipe blinding, took the laying of pipe out of the independent contractor status. If it were assumed that such voluntary act on the part of Ewer made him an employee as to that backfilling and pipe blinding—an assumption hardly justified under the facts—he was not killed while so engaged, but was killed while engaged in the pipe laying job—the independent contract work.

The following recent decisions by this court discuss the various matters to be considered in determining whether or not a given service contractual relationship is that of employee, or that of independent contractor: *Miller* v. *Industrial Comm.*, 97 Utah 226, 92 P. 2d 342; *Stover Bedding Company* v. *Industrial Comm.*, 99 Utah 423, 107 P. 2d 1027, 134 A. L. R. 1006; *Parkinson* v. *Industrial Commission*, 110 Utah 309, 172 P. 2d 136. Such matters are discussed as (1) whether or not the employer has the right to control the execution of the work by the employee; (2) whether or not the work to be done is a part or process in the trade or business of the employer; and (3) whether or not the work to be done is a definite job or piece of work. There are other matters discussed but these three are particularly appropriate to the present case. There is no evidence in the present case justifying a conclusion that Neff exercised or intended to exercise any supervisory control over Ewer, such as would bring the relationship of the two under the first listing above. It seems obvious that in view of the City's requirement that a licensed plumber do the work Mr. Neff would not undertake any directing as to how it should be performed. If he were capable of doing that, then he no doubt would have qualified for the pipe laying. Although Mr. Neff was in the contracting business as a means of livelihood, in this particular case he was engaged in building his own apartments, and not engaged in such work for others. Therefore, Mr. Ewer was in the position of a prime contractor. Thus there may be some question of the application of the second matter listed to the facts of this case.

As to the third listing, it is quite clear that the contract for the laying of the pipe was for a definite job in line with the special qualifications of Ewer as a licensed plumber. We are of the opinion that the decision of the Industrial Commission should be affirmed. It is so ordered.

McDONOUGH, C. J., and WADE, WOLFE, and LATIMER, JJ., concur.