# CHRISTEAN et al. v. INDUSTRIAL COMMISSION et al.

No. 7034.   Decided July 14, 1948.   (196 P. 2d 502.)

452

See 71 C. J., Workmen's Compensation Acts, sec. 919. Insurance soliciting agent as employee or independent contractor within workmen's compensation acts, see note, 138 A. L. R. 1122.

*Dean E. Flanders, Willard Hanson,* and *Stewart M. Hanson,* all of Salt Lake City, for plaintiffs.

*Grover A. Giles,* Atty. Gen., and *Ray Quinney & Nebeker,* of Salt Lake City, for defendants.

LATIMER, Justice.

Action to review an order of the Industrial Commission denying compensation to petitioners for the reason that the deceased was not an employee of the defendant California Western States Life Insurance Company.

On the 16th day of June, 1943, deceased Arthur Christean, entered into two agency contracts with the California Western States Life Insurance Company. The first contract involved the relationship of the parties and their respective rights in connection with the sale of life insurance policies and the second dealt with their relationship and respective rights in the sale of accident and health policies.

Taking the terms of the contracts most favorable to the contention of the petitioners we find the accident and health contract providing: (1) That the agent, deceased, shall devote his best energies to the interests of the company in developing and maintaining its business in said territory; (2) that he shall promptly render such services as the company may require to effect the discharge of any claims presented by policyholders; (3) that he shall strictly comply with all written and printed instructions that may from time to time be communicated to him; and (4) that either party shall have the right to terminate the contract by giving to the other ten days' notice in writing of its or his desire so to do. The life contract provides: (1) That the agent shall endeavor to promote the interests of the company as provided in the contract; (2) that he will refrain from conduct which might adversely affect the business and good standing of the company; (3) that he will do no business for any other life insurance company without written consent of the company; (4) that he will not engage in any business other than that covered by the contract; and (5) that the contract can be terminated upon 30 days' written notice to the other party. In both contracts de-

ceased's territory was limited to the state of Uah, but this territory could be limited or withdrawn and in both contracts payment for his services was on a commission basis.

The deceased commenced working for the insurance company on the same day the contracts were dated, and continued his services until April, 1944, when he was drafted into the armed services of the United States. Pursuant to an offer made in a letter from the company, deceased, on the 15th day of November, 1945, again commenced selling insurance. The terms and conditions under which he was to sell were those contained in the two contracts hereinbefore referred to, except as they may have been modified by the terms of the letter which will be hereinafter referred to.

On the 9th day of January, 1946, after having obtained some prospect cards from the files of the insurance company, deceased started on a trip to St. George, Utah, for the purpose of soliciting applications for insurance. While en route to his destination he was killed by reason of a collision between his car and a truck.

The contracts between the deceased and the insurance company had the usual clause restricting the rights of agents to bind the company and applications were not to be completed contracts until approved by the company. Both contracts provided that the deceased was entering into the contracts as an independent contractor and not otherwise. The life contract provided that the company could prescribe rules and regulations provided they did not interfere with the freedom of action of deceased. The accident contract merely provided he should comply with all written or published instructions. The contracts were silent as to the hours to be worked and as to the means of transportation to be used, but all expenses were to be borne by the agent.

On July 14, 1945, the insurance company wrote the deceased a letter expressing regret that he had not rejoined the sales force of the company and included in the letter was the following offer:

"* * * I will attempt to tell you what your deal would be in the event you decide to come back to us. *The Company would pay*

*you an out and out salary for three months* of $150.00 per month in addition to your commissions. This would not be in the way of an advance or anything of the kind, *just an out and out salary.* Then they would be glad to advance you any additional amount that you would need to take care of your budget. *This comes under the jurisdiction of the rehabilitation program for service men,* and I personally think it is quite something." (Italics ours.)

The record indicates that the company had established a rehabilitation program for veterans and that it paid them $150 per month for three months which was not in any way connected with the selling of policies. To qualify for these monthly payments the returning salesman was required to take a refresher course. The record further indicates the deceased had completed the course but the full three months' pay had not expired at the time of his death, and had he lived he would have been entitled to the remaining payments.

There is only one question to be determined in this case. That is, was the deceased an employee of the insurance company at the time he met his death? However, this question must be divided into two parts: First, did the two original contracts and the method of operation thereunder create the status of master and servant; and second, if they did not, did the letter of November 15, 1945, together with the contracts and method of operation, create such a status?

It will clarify the opinion to first dispose of the second question. The Industrial Commission found that if the letter did in fact create the relationship of employer-employee, it was only for a limited purpose and the purpose had been served before the deceased departed on his last and fateful trip to St. George. This being a jurisdictional question, this court is required to examine the evidence to see whether it preponderates against the conclusions of the Commission. See *Norris* v. *Ind. Comm.,* 90 Utah 256, 61 P. 2d 413.

In addition to the information contained in the letter hereinbefore quoted, the wife of the deceased testified that she had conversations with two officials of the insurance

company regarding the deceased's return to the employment of the company as a salesman. The substance of these conversations was that the company was making some special arrangements for returning servicemen; that the deceased was to receive $150 per month for three months; that he was to be paid a commission on any sales made by him; that he was to take a refresher course known as "You, Incorporated;" and that the deceased would be required to show an interest in the work and to work every day.

Petitioner's evidence further shows that deceased reported to the office regularly every morning, during the time he was taking the course. That his wife made frequent telephone calls and up to the time deceased left for St. George, he was present in the office to answer the phone. That deceased was paid at the rate of $75 every 15 days. That during the month of December, 1945, and the first part of January, 1946, certain policies of insurance were sold by the deceased.

The evidence elicited from officers of the insurance company was substantially as follows: That the deceased was a returned veteran and was eligible to participate in a readjustment bonus; that the money was not an advance but an outright payment which need not be repaid; that the deceased was required to take a refresher course in "You, Incorporated," in order to receive the money; that deceased took the course, completed it on the 26th or 27th of December, 1945, and had no further duties to perform in connection with the rehabilitation program; that had the deceased lived he would have received the other payment on the readjustment program; and that deceased's trip to St. George was for the purpose of soliciting insurance and was not in connection with his duties under the readjustment program.

The preponderance of the evidence is in keeping with the finding made by the Commission. The evidence clearly established that the deceased was to be re-employed under the terms and conditions of the contracts of June 15, 1943, and that the payment of the $150 per month

was intended as an inducement to deceased to return as an agent for the insurance company. If this letter did in fact create the relationship of employer-employee, it was for the limited purpose of requiring deceased to refresh his ideas on selling insurance, and the evidence preponderates in favor of the finding that deceased had completed his refresher course. An agent can be an employee for a limited purpose and an independent contractor for other purposes. If, as found by the Commission, the schooling and refresher course was severable from the duties imposed by the agency contracts, then when the schooling program was completed, the relationship terminated and reverted back to that created by the original contracts.

Petitioners stress the fact that the letter written to the deceased characterizes the payment as an outright salary, and that the full three months' period had not expired. They, however, overlook the portion of the letter which provides that the payment comes under the jurisdiction of the rehabilitation program for servicemen, and disregard the evidence that the deceased had completed the requirements of the program. Even though payment had not been made in full, this fact is not inconsistent with the testimony that the course was finished. The original understanding was that the payments would be on a monthly basis and the time for payment in full had not arrived at the time deceased was killed. Certainly, when deceased was killed he was not participating in the schooling program and any control the company may have been able to exercise in connection with the schooling was ended when the course was completed.

The real question posed in this matter is: Was the deceased, by virtue of the two contracts executed on the 16th day of June, 1943, an employee of the insurance company or was he an independent contractor?

The case books are literally filled with cases dealing with this subject, and many contain a number of suggested tests as aids to assist in the determination. Before dealing with the cases in this jurisdiction, we consider it desirable to test

the facts of this case with the factors set forth in the Restatement of the Law. This work on the subject of Agency, Par. 220, page 483, suggests the following tests:

"(1) A servant is a person employed to perform service for another in his affairs and who, with respect to this physical conduct in the performance of the service, is subject to the other's control or right to control.

"(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

"a. The extent of control which, by the agreement, the master may exercise over the details of the work;

"b. whether or not the employed is engaged in a distinct occupation or business;

"c. the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"d. the skill required in the particular occupation;

"e. whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"f. the length of time for which the person is employed;

"g. the method of payment, whether by the time or by the job;

"h. whether or not the work is a part of the regular business of the employer; and

"i. whether or not the parties believe they are creating the relationship of master and servant."

Considering some of the factors that are helpful in determining the status of deceased, it is apparent that with the exception of criteria (a) and (i), the facts of this case tend to establish an employer and employee relationship. Here the deceased was not engaged in a separate and distinct occupation or business. His full time was spent in selling insurance for the company. He did not have his "own" business. His office, telephone, desk supplies, advertising and assistance were all furnished by the insurance company. He could not work for anyone else without written consent of the company, and he could not use or display advertising not approved by it. In the event the company refused to accept an application, the agent could not place the insurance with another company, but on the contrary the premium

must be refunded. He was a party to two agreements that could be cancelled without liability on the part of either party. The contracts were to remain in force until terminated and they could not be assigned, so that no other person could perform his duties without the consent of the company. The services to be performed, selling insurance policies, was a very fundamental part of the business of the company. The payment for services was on a commission basis and while it was in effect, payment on a job basis, in the final analysis, the original sales and renewal commissions make a continuous income arrangement rather than payment in full upon a piece basis.

Granted that the foregoing factors tend toward an employer-employee relationship the other two criteria militate against this relationship. In view of the fact that "the extent of control that can be exercised" by the principal is by all the cases and textbooks, the important test, factor (i) will be considered first. This factor must be resolved in favor of an independent contractor relationship. Here, both parties contracted that the relationship should be that of independent contractor and not otherwise. While it is not intended to hold that because parties contract as to a status, it is binding on this court, nevertheless, when, as under the facts of this case, the parties declare their intention, this declaration must be given some effect. We are not here concerned with a situation where parties try to circumvent the law by contract. For many years the decisions of this court have created the belief that a salesman working under similar terms and conditions, as the deceased, is an independent contractor. In this connection attention is called to the case of *Stover Bedding Co.* v. *Ind. Comm.*, 99 Utah 423, 107 P. 2d 1027, 134 A. L. R. 1006, and others cited in this opinion.

Furthermore, the Industrial Commission in this case held the deceased to be an independent contractor and based its decision on the interpretation of the law as announced by this court in the cases of *Parkinson* v. *Ind. Comm.*, 110 Utah 309, 172 P. 2d 136; and *Kinder* v. *Ind.*

*Comm.*, 106 Utah 448, 150 P. 2d 109. There is no contention made that the employer was by contract trying to evade the law or using any legal device to create a fictitious relationship. Where parties in good faith contract as to a status and the understanding arrived at is not contrary to the law as it is then announced, the intent of the parties as set forth in such a contract can be considered as an element in determining the relationship of the parties and can be given weight by the Commission and this court. Such a provision in a contract has the effect of negating an intent on the part of the master to retain control and an intent on the part of the agent to yield control. However, the weight to be given this factor may be inconsequential if the other terms of the contract and the evidence aliunde the contract are such that by peering through the mask of contract phraseology it can be reasonably determined the contract was merely a guise to conceal the true relationship.

Mr. Justice Wolfe, in his dissenting opinion in *Stover Bedding Co.* v. *Ind. Comm.*, ante, presents a very thorough treatise on the historical development of the law of independent contractor. He points out the reasons why the law permitted parties to claim and establish a relationship of independent contractor. It is not necessary for us now to deal with the reasons for the development, and a reference to the decision above quoted will suffice. It is only necessary to determine whether the cases previously decided by this court should be affirmed, overruled or distinguished from the case at bar.

Some of the factors previously discussed blend themselves into the "right of control" factor, and even though separately mentioned and partially discussed, cannot be torn entirely apart from the right of control factor. It may be that an agent may have his "own business" and this may be treated as one separate criterion of the type of relationship; yet it has a direct bearing on the right of the principal to control the agent. The agent in that situation is less likely to be supervised and controlled, either directly or indirectly,

than is the person whose sole income is derived from his efforts for the master. To terminate the relationship may be of little consequence to the former, but may be of grave concern to the latter. The same reasoning can be applied to the other factors.

As was pointed out by Mr. Justice WOLFE in his discussion of the Employer-Employee Relationship, Vol. XLI, p. 1015, Columbia Law Review, at page 1028:

"The courts have not always recognized that elements such as method of payment, character of employment, and power to discharge are often merely used as factors to determine whether there exists a right of control, rather than as independent criteria of the type of relationship. Where the courts make the legal relationship turn solely on the test of presence or absence of control, regardless of whether the claimant is exercising an independent calling and even regardless of whether he is engaged to accomplish a single definite result, the manner and terms of payment, power of discharge immediately or upon definite notice would seem to be immaterial except as aids in determining the presence of the right of control. If there is direct and positive evidence of control, under the holdings of such decisions other features would be immaterial."

Can we say in this case that there is direct and positive evidence of control by the insurance company? Not the control that is in fact being exercised, but rather the control that can be exercised as a matter of right. If the master has the right of control, the fact that he fails to exercise it is of no importance.

In this particular action it is admitted deceased had no calling separate and distinct from that of an insurance salesman. He was required by the terms of the contract to devote his full time to selling policies for the company. If there was any part of a business that could be considered as belonging to deceased, it would only consist of his right to take applications and receive commissions on his sales. Even that could be taken away from him without reason and without any liability if the company elected to cancel the contract. Without discussing the details of the contract respecting renewal commissions, it might be said that de-

ceased could be fired by the simple expedient of serving him with notice. If, therefore, the insurance company did not exercise control over the deceased it was because he was free to work when and if he saw fit and to go where and when he pleased and by whatever method of travel he selected.

In cases involving similar facts it has been argued that regardless of the right of an employer to govern his hours, places of work, and method of travel, the principal still has indirect control over the agent in that it can terminate the contract and, in effect, fire him from the job. Quoting again from Mr. Justice WOLFE'S opinion in the *Stover* case, at page 433 of 99 Utah, at page 1031 of 107 P. 2d:

"*   *   * One in Knudsen's position may have the satisfaction of thinking that his movements cannot be controlled, but that is an empty satisfaction when he considers that he is subject to having his relationship severed at any time on short notice. That right to terminate the relationship at any time, in effect, gives the company control. I refer to my opinion in *Fuller Brush Company* v. *Industrial Comm.*, 99 Utah 97, 104 P. 2d 201, at page 207, 129 A. L. R. 511, for a discussion of indirect control through the advantaged position of the one who has the job to give or take away."

While this may be an effective method of control, it can hardly be considered the sole and exclusive test. Many a broker, who is in fact a true independent agent, and who may have the right to sell a much-wanted article and may have built up a valuable business so that a cancellation of his right to sell may seriously effect his income, is subject to this same control. The master may be able to exert the same influence on the broker in such a situation, yet it would not change the relationship to that of employer-employee. Many of the manufacturers of nationally advertised goods may exert indirect control over local selling agencies, but this alone cannot create an employer-employee status.

Perhaps the best test of all would be the "own business" or "independent calling" test, but this court in its previous

decisions has chosen not to follow this rule. To now adopt such a principle would, by judicial decree, wipe out a firmly established precedent and legislate coverage to many agents heretofore considered by this court and by the public as not covered by the Workmen's Compensation Act. Utah Code 1943, 42-1-1 et seq. While present social concepts may dictate that commission salesmen should be considered employees, in view of the development of our law and the numerous decisions of this court over a period of years, if such a change is to be made it should be accomplished by the legislature.

It can well be reasoned that the legislative department of this state intends that agents, such as deceased, be considered independent contractors. *Stover Bedding Co.* v. *Ind. Comm.*, supra, was decided by this court in 1940. At least four subsequent legislatures have not considered it advisable to change the rule therein announced. Rather than extend such social enactments as Workmen's Compensation and Unemployment Compensation to insurance salesmen, the only legislature dealing with either subject, since that decision, restricted the coverage so as to exclude them from the provisions of the Unemployment Compensation Act. Utah Code 1943, 42-2a-1 et seq. Regardless of the reasoning for so doing, the coverage of the Unemployment Compensation Act is more inclusive than the coverage of the Workmen's Compensation Act, and if the legislative intent is to consider them independent contractors under a more liberal act, this court should not reverse itself and include them under a more restricted act.

This argument has no force if the facts of this case do not bring the petitioners under the principles of law previously announced by this court. The development of the law of independent contractors in this state closely follows the pattern given by Mr. Justice Wolfe in his decision in the *Stover Bedding Co.* v. *Ind. Comm.* case, and his dissenting opinion brought out in bold relief the two paths that could be followed. The early cases such as *Morris* v. *Salt Lake*

*City,* 35 Utah 474, 101 P. 373; *Callahan* v. *Salt Lake City,* 41 Utah 300, 125 P. 863; *Dayton* v. *Free,* 46 Utah 277, 148 P. 408; *Wooton* v. *Dragon Consol. Min. Co.,* 54 Utah 459, 181 P. 593; all involved the question of liability of the principal for negligent acts of the agent. Those cases all announce the controlling factor to be the right to control. Quoting from *Dayton* v. *Free,* 46 Utah at page 284, 148 P. at page 411:

"* * * the claim is made that the relation between the company and the contractors was not that of independent, but nonindependent contractors. We do not think the claim tenable. To support it the plaintiff cites and relies on 1 Thompson Neg. 659-661; I Bailey Personal Injuries, p. 108; *Barg* v. *Bousfield,* 65 Minn. 355, 68 N. W. 45; 1 Shear. & Redf. Neg. (4th Ed.) 164; Moll. Ind. Contr., pp. 48, 63; *Harmon* v. *Ferguson Contracting Co.,* 159 N. C. 22, 74 S. E. 632; *Quayle* v. *Sewerage & Water Board,* 131 La. 26, 58 So. 1021; *Atlantic Trans. Co.* v. *Coneys,* 2 Cir., 82 F. 177, 28 C. C. A. 388. We do not think the cited authorities uphold him. They relate to instances and cases where the proprietor or employer reserved or exercised the right to superintendent, direct or control the work, not only with respect to results, but also with reference to methods of procedure or means by which the result was to be accomplished * * *."

One of the first cases decided by this court after enactment of the Workmen's Compensation Act was *Stricker* v. *Ind. Comm.,* 55 Utah 603, 188 P. 849, 19 A. L. R. 1159. Even though this case determined the relationship under the Workmen's Compensation Act, and did not involve the doctrine of respondeat superior, the same principles were used to determine the status. The tests for determining whether the relationship be one of servant or independent contractor in those cases dealing with injuries to third parties were carried over into the compensation field and the principles announced in the earlier cases were held to be controlling in the new field. In that case the court said at pages 608 and 611 of 55 Utah, at pages 851 and 852 of 188 P.:

"The definition of an 'independent contractor' is equally well settled. An independent contractor is one working for another who has

no control as to the means by which the work is accomplished. As stated in 2 Words and Phrases ([Second] Series) 1034, 'an independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work. Many other definitions of what constitutes an independent contractor are given in Words and Phrases, but there is no departure from the general principle that, 'where a person lets out work to another under contract, preserving no control over the work or workman, the relation of contractor and contractee exists, and not that of master and servant,' and that 'if one renders service to another in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished, he is an independent contractor.'

\* \* \* \* \*

"Under all the authorities that we have examined, and especially in the light of *Dayton* v. *Free,* supra, the contracts are not those between employer and employe. Fuhriman and Theurer and Stricker and Oliverson must all be held, under the contracts and the circumstances of this case, to be independent contractors."

*Rockefeller* v. *Industrial Commission,* reported in 58 Utah 124, 197 P. 1038, involved an extra automobile driver who was paid on a commission basis and who worked irregular hours. The court avoided the question of servant or independent contractor and decided the case on the theory of bailor-bailee. Perhaps this was an attempt to follow those cases which sought to avoid the employer-employee relationship where right of control was doubtful. Said the court at page 131 of the Utah report, at page 1040 of 197 P.:

"In view of the undisputed evidence, therefore, what was the relationship between plaintiff and the deceased? Manifestly they did not sustain the relationship of master and servant or of employer and employe within the purview of the Industrial Act. The plaintiff had no control over the deceased whatever. He could come and go as he pleased. He could answer a call for taxi service or refrain from doing so at will. He could come at any time of the day and could remain as long as he chose. While it is true he was at plaintiff's place of business and attended to calls for taxi service as hereinbefore stated for about two weeks before the accident, yet that was because he desired to be there and take advantage of any calls, and not by virtue of any agreement existing between him and plaintiff

under which he was obligated to be there. While it is clear, to our minds at least, that there was no contract of hire and employment between plaintiff and deceased, yet did they not sustain some legal relationship in respect to each other and the business? We think they did. What relationship was that? We think it was that of bailor and bailee. * * *"

In the cases of *Angel* v. *Ind. Comm.*, 64 Utah 105, 228 P. 509; *Luker Sand & Gravel Co.* v. *Ind. Comm.*, 82 Utah 188, 23 P. 2d 225; *Gogoff* v. *Ind. Comm.*, 77 Utah 355, 296 P. 229; *Murch Bros. Construction Co.* v. *Ind. Comm.*, 84 Utah 494, 36 P. 2d 1053; *Gibson* v. *Ind. Comm.*, 81 Utah 580, 21 P. 2d 536; *Miller* v. *Ind. Comm.*, 97 Utah 226, 92 P. 2d 342; *Commercial Casualty Ins. Co.* v. *Ind. Comm.*, 71 Utah 395, 266 P. 721; *Parkinson* v. *Ind. Comm.*, 110 Utah 309, 172 P. 2d 136; *Kinder* v. *Ind. Comm.*, 106 Utah 448, 150 P. 2d 109, this court reiterated the "right to control" principle and in each case held the control exercised by the principal was not such as to require a finding of employer-employee relationship. The control being limited to the result of the work or services.

Cases using the same test but holding the agent to be an employee are *Weber County-Ogden City Relief Committee* v. *Ind. Comm.*, 93 Utah 85, 71 P. 2d 177; *Murray* v. *Wasatch Grading Co.*, 73 Utah 430, 274 P. 940; *Utah Fire Clay Co.* v. *Ind. Comm.*, 86 Utah 1, 40 P. 2d 183. The case of *Murray* v. *Wasatch Grading Co.*, while cited as authority for holding the agent an employee, is in a little different category than the other cited cases. In that case the issue of independent contractor was not involved; it was simply a question of which of two companies was the employer.

The foregoing cases are grouped generally and are not individually discussed for the reason that they all involve questions of fact that are dissimilar to those of the case at bar. Even if each were analyzed in detail, it would be most difficult to establish an all-embracing rule as a definite and inclusive guide for a proper determination of this problem. In relationships such as here involved, there is a fine

line of distinction between those cases catalogued in one class and those in another, and one element alone may be the controlling fact. Because of this we have reserved two cases, i. e., *Chatelain* v. *Thackeray,* 98 Utah 525, 100 P. 2d 191; and *Stover Bedding Co.* v. *Ind. Comm.,* 99 Utah 423, 107 P. 2d 1027, 134 A. L. R. 1006, for more thorough discussion, as the facts in those cases are quite akin to the facts of this case.

*Chatelain* v. *Thackeray* involved the doctrine of respondeat superior. The employment contract is set forth in the opinion on pages 532, 533 of 98 Utah, on page 194 of 100 P. 2d and was stated to be as follows:

"The written agreement between appellant and the defendant, Thackeray, was entered into on the 19th day of April, 1934, and, as has been said, was still in effect at the time of the accident, February 8, 1938. By its terms appellant constituted and appointed the defendant, Thackeray, its agent for the territory designated therein as 'Morgan, Ogden, Utah and vicinity.'

"The agreement provides that the said H. A. Thackeray is appointed agent 'to canvass and procure applications for ordinary life insurance in said company, in the territory named; to collect and pay over the premiums thereon to the company in cash on such insurance when effected, and to perform such other duties in connection therewith as may be from time to time required by the company, and for no other purpose whatsoever.' It further provides, among other things, that the said agent should have no authority to alter or discharge any policy, to extend the time for paying any premium, to incur any liability on behalf of the company, or to enter into any contract or agreement whatsoever on behalf of the company. As to the powers and duties of the agent the agreement provides that the agent 'shall devote his entire time and energies to the business of the company, carry out its instructions, promote its success and welfare, and shall do no business for any other life insurance company;' and further, that 'the agent shall be governed by the written and printed instructions and rules which he may from time to time receive from the company,' and that 'all moneys received or collected for or on behalf of the company, shall be held by the agent in trust for the company, and shall not be used by him * * * but shall immediately be deposited to the credit of the American National Insurance Company in a bank designated by the company or shall be paid over to such person as the company shall designate. * * *

"The agreement then provides that the agency thereby created shall continue until terminated either by (1) death or resignation of the agent; (2) by either party giving notice in writing to the other at least thirty days before the date therein fixed for such termination; or (3) by certain embezzlements, defaults, or other misfeasance on the part of the agent, or 'for nonproduction of business for ninety (90) days.'

"Finally, the agreement sets forth a schedule of commissions to be paid by the company upon policies issued on applications procured by the agent. This schedule provides that the agent is to receive a certain percentage of the premium paid upon such policies for the first year, and thereafter for ten years a smaller percentage upon subsequent premiums paid. The latter are designated as 'renewal commissions.' These commissions are the only compensation provided by said agreement for the agent."

For all practical purposes the terms of Thackeray's contract were the same as those embodied in the contract executed by deceased, with the exception that the contract executed by Thackeray did not designate him as an independent contractor. In that contract he was designated as an agent.

The opinion in the *Thackeray* case deals loosely with the terms "employee" and "agents" and while in many instances the principles of law may effect each equally, at times there is considerable difference. A wife may be an agent of a husband for the purpose of holding the latter liable as principal, but the relationship of employer-employee does not result. Likewise a broker of insurance might bind an insurance company to a contractual obligation without being an employee. It is significant to note how the court dealt with the subject, at page 543 of 98 Utah, at page 199 of 100 P. 2d:

"Now as to appellant's second contention: That under the undisputed facts in the case Thackeray was an independent contractor, and not an employee of appellant. The precise point at which the differentiation between the status of agent or servant and independent contractor occurs is elusive. It is one of those fields wherein the line of demarcation may not be drawn with arbitrary certainty, but wherein it is in large measure to be discovered anew under the varying facts presented by each case. In drawing such line certain gen-

eral rules are helpful and almost universally serve as guides. The rule of broadest and most universal application is the right of control as to the manner of doing the work to be performed under the contract. 39 C. J. 316; *Wooton* v. *Dragon Consol. Min. Co.*, 54 Utah 459, 181 P. 593. If such right of control belongs to the principal or master then the person doing the work is not an independent contractor, but is an agent or servant. It is to be noted in this connection that it is not actual interference in the work that denotes the agency, it is the right to interfere that makes the difference between an independent contractor and a servant or agent. 39 C. J. 1317; *Ludlow* v. *Industrial Commission et al.*, 65 Utah 168, 235 P. 884, 888."

The court, although recognizing a difference between an agent and a servant, held the difference to be academic, and found Thackeray to be both an agent and employee. 2 C. J. S., Agency, § 2e sets forth in the following language the general rule in connection with distinguishing a master-servant relationship from that of principal and agent:

"The distinction between principal and agent and master and servant is very difficult to define; the two relations are essentially similar and the real difference between them may be said to be one of degree only. While the terms may be and sometimes are used interchangeably in a general sense applying to all persons in the service of another, and the principles governing the rights, duties, and liabilities growing out of the two relations are, for the most part, the same, the agent, it has been said, is employed in a capacity superior to that of the servant, being entitled, in general, to use his discretion as to the means to accomplish the end for which he is employed, while the servant is directed by the master, not only as to what is to be done, but how it shall be done.

"Agency, properly speaking, relates to commercial or business transactions, while service deals with matters of manual or mechanical execution; and the essential distinction is that the agent is employed to establish contractual relations between his principal and third persons, while the servant is not. If one is employed to perform personal service for another and his physical movements in the performance of such service are subject to the other's control, he is a servant, while if he is employed to represent another in contractual negotiations or similar transactions, he is an agent."

These distinctions are pointed out to show that the *Chatelain* case is not necessarily in conflict with the *Stover*

*Bedding* case which will be discussed later. This court, in the *Chatelain* case, need not have considered the employer-employee relationship. If, as indicated in the opinion, Thackeray was performing other duties for the company, and at its request, such as collecting premiums or delivering money to its home office, then while carrying out those duties he may have been selected by the company as an agent for that purpose. It was while he was returning from one of these special errands that he injured the third parties and this element alone might make the principal liable for his acts of negligence under the doctrine of respondeat superior. The results of that case could have been reached separate and apart from an employer-employee relationship. If, therefore, the language of the two decisions indicate they are in conflict they can be reconciled on the grounds that the *Chatelain* case deals with the rights of injured third parties under the doctrine of respondeat superior. The court expressly held that Thackeray's status was academic as the result would be the same regardless of his relationship to the company, while the *Stover Bedding Company* case passes squarely on the employer-employee relationship.

In the *Stover Bedding Co.* v. *Ind. Comm.* case the deceased was killed while returning from a selling trip in Idaho. At the time of his death he was selling for the Stover Bedding Company and Smith and Davis, a company who manufactured a complementary line of merchandise. Continuing with the facts of the case as set forth on page 1028 of 107 P. 2d:

"There was no written contract between deceased and plaintiff company, but much of the evidence is undisputed. Knudsen was supposed to sell plaintiff's products, together with the products of Smith and Davis Company. He was not specifically limited as to territory, but he confined his efforts to Utah, Idaho and Wyoming. He received no instructions as to where he should go, when he should go, or how he should conduct his work. He furnished his own means of transportation, paid all his own expenses, and used his own judgment concerning what trips he should make and when he should make them. Mr. Stover, of the plaintiff company, testified that he had no

right to control deceased's movements or manner of doing his work —and that he did not in fact do so. Applicant herself stated that her husband could work where and when he chose.

\* \* \* \* \*

"It appears that the basis on which deceased received compensation for his services was the amount of his sales, but instead of receiving a strict commission on such sales, he was given a definite allowance each month. While this allowance was based on the amount of sales made over a given period, it was nevertheless a specific sum received monthly, irrespective of sales made during that month. At various times the deceased and plaintiff company would make a settlement, and if the amount of sales made by deceased was greater or less than anticipated, adjustment was made as to future payments to deceased to equalize the difference. \* \* \*"

From the foregoing resume of fact it can be ascertained there is little difference in the factors present in that case and the one at bar. In the *Stover* case there was no written contract proclaiming the relationship to be that of independent contractor, the agent's instructions were not reduced to writing, the rate of pay was not based entirely upon a commission basis, and Stover was permitted to sell for another company. The decision in that case was based on the "right of control" and with regard to that element the two cases are quite similar, unless the *Stover* case can be differentiated because the agent sold an auxiliary line. However, it would appear that even though the salesman was permitted to sell a complementary line, this arrangement was with consent of all parties and would not affect the right of the company or companies to control the details of his work. The only difference it might make would be to require the two employers to share the burden of protecting the employee.

Unless we disregard the right of control test announced as the controlling factor, and unless we overrule the *Stover Bedding* case, the decision of the Industrial Commission must be affirmed. Applying the right of control test to the facts of this case, we find that these elements are indicative of some control: The company reserved the right to reject any application submitted by him. The accident

and health contract provided that he must comply with all written and printed instructions that might be communicated to him. The life contract also provided for compliance with rules and regulations of the company provided they did not interfere with freedom of action by the agent. The deceased was not permitted to represent any other company and his full time was to be used to promote sales for the respondent company. Either of the contracts could be terminated by either party upon giving the other appropriate notice. These elements directly affected the results but did not control the details of the work.

The elements which indicated an intent on the part of the company not to control the details and physical activity of Christean were these: At the time of his death the contract authorized him to sell on a commission basis. The life contract provided that he was free to exercise his own judgment as to persons from whom he could solicit insurance and the time and place of solicitation. There is no evidence in the record that the instructions with which deceased had to comply are other and different from the sales instructions and rates issued by life insurance companies. In taking applications for insurance the deceased could go anywhere in the state of Utah. He was not required to drive an automobile. He could go or come in any manner he chose. He could walk, drive, or fly. His mode or method of travel was a matter left to his own discretion. If he chose to charter a plane or hire a car he was at liberty to do so, regardless of the competency or incompetency of the pilot or driver. The company did not furnish a mode of transportation, it paid none of the expenses, and it was powerless to direct the route or speed, to designate the driver or even to determine the fitness of the vehicle for such use. The agent had no regular working hours and could come and go when and if he saw fit. He could sell in the railroad shops, in the office, in the home, in the pool room, or on the golf course. He could spend little or much time selling. He was free to exercise his discretion as to whether

he would work night or day, when he would be at his desk, what clients he would serve, and the hazards he would assume.

When the contract and actions and conduct of the parties pursuant to it are considered in their true perspective, Christean was an independent contractor. As said by the United States Supreme Court in the case of *Singer Mfg. Co.* v. *Rahn*, 132 U. S. 518, 10 S. Ct. 175, 176, 33 L. Ed. 440, 442 (a case involving a third party injury) :

"'* * * And the relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, 'not only what shall be done, but how it shall be done.' [*New Orleans, M. & C.*] *Railroad Co.* v. *Hanning* [82 U. S. 649, 656], 15 Wall 649, 656, [21 L. Ed. 220, 223]."

The control by the company did not go to the extent of directing how the work should be done. The control the company could exercise consisted in limiting Christean's right to bind the company contractually, and to control the results of his work. The company undoubtedly required him to produce results, but it did not control the way in which he accomplished them. A cancellation of the contract may be an indirect way of controlling results and may indirectly require a salesman to be more ambitious and devote more time to his calling, but it does not permit dictating the means and methods used. As a matter of fact, the salesman who has the best selling record is more independent than one who produces little, even though in the former instance the threat of cancellation may be more coercive and may threaten a more valuable right.

This case seems to fall under the general principle announced in the Restatement of the Law of Agency, Vol. I, Par. 220, page 485:

"'* * * The important distinction is between service in which the actor's physical activities and his time are surrendered to the control of the master and service under an agreement to accomplish results or to use care and skill in accomplishing results. Those ren-

dering service but retaining control over the manner of doing it are not servants. They may be agents, agreeing only to use care and skill to accomplish a result and subject to the fiduciary duties of loyalty and obedience to the wishes of the principal; or they may be persons employed to accomplish or to use care to accomplish physical results, without fiduciary obligations, as where a contractor is paid to build a house. An agent who is not subject to control as to the manner in which he performs the acts that constitute the execution of his agency is in a similar relation to the principal as to such conduct as one who agrees only to accomplish mere physical results. * * *"

Accordingly, we hold the deceased to have been an independent contractor and the order of the Industrial Commission is affirmed.

McDONOUGH, C. J., and PRATT, J., concur.

WADE, Justice (dissenting).

I dissent. I think the facts as disclosed in the prevailing opinion require us to conclude as a matter of law that deceased met his death in the course of his employment while he was the employee of the California Western States Life Insurance Company. If such is the case the applicant is entitled to be awarded compensation.

When deceased returned from the armed forces the insurance company wrote him a letter dated July 14, 1945, wherein it offered to "pay you an out and out salary for three months of $150.00 per month in addition to your commissions." In that letter he was told that: "This comes under the jurisdiction of the rehabilitation program for service men." Deceased accepted this offer and on November 15, 1945, pursuant thereto, commenced to work for the company and was required to take a refresher course. From November 15th to December 26th or 27th he was required to report at the office of the company each morning and to spend much of his time there and he also sold some insurance. The evidence shows that in order to earn this $150 he was required to work ever day, to take a

refresher course and to take an interest in his work. His salary was paid at $75 twice monthly and that pursuant to these arrangements while on his way from Salt Lake City to St. George, Utah, he met with an accident and was killed on January 9, 1946, before the three months had expired.

The prevailing opinion indicates that during the time that he was taking this refresher course deceased was an employee of the company. It is too well established to require the citation of cases that whether a person is an employee or an independent contractor is largely determined on the basis of whether or not the employer has the right to control the actions of the other person who is rendering the services; that it is the right to control and not whether such control is exercised that is the important question, and the fact that a salary is being paid tends strongly to indicate the right to control.

Under the facts here established the right of the insurance company to control the very movements of the deceased at least to the end of the three month period is clearly shown. It had the right to and exercised that right to require him to come to the office and spend much of his time therein, and to take a refresher course. He was working under exactly the same contract after the refresher course was ended that he had been working under during the time that he was taking that course, so the right of the company to control his actions and the manner of his work was the same after that period had ended as it was before. Under that contract the insurance company had the right to require him to continue to take the refresher course all during the three months' period. It had the right to see that he followed what he was taught in that course and to supervise his methods therein. The right to supervise his labors was not changed one iota by the fact that it did allow him to choose his own methods. A person can be an employee even though he directs his own actions as well as the actions of other employees of a corporation.

I therefore conclude that during the three month period, at least, decedent was an employee of the insurance company and his dependents are entitled to be awarded compensation.

I also concur with Mr. Justice WOLFE'S dissenting opinion.

WOLFE, Justice (dissenting).

I dissent. At the outset, I am ready to concede that the question posed by this case is very close, and that Mr. Justice LATIMER, in his very able opinion, has stated very strongly the position for which the majority holds. However, after a study of the previous Utah cases treating the question here involved, I am convinced that a contrary result should obtain.

The prevailing opinion quotes from the Restatement of Agency, Section 220, which enumerates nine criteria for determining whether one acting for another is a servant or independent contractor, and then proceeds to point out that all but two of the tests there suggested, when applied to the facts of this case, point to a master and servant relationship. The opinion goes on to argue that the test of right of control, when applied to the facts of this case, points to an independent contractor relationship and that that test is the paramount, indeed the determinative factor, in this class of cases. It is therefore concluded that decedent, at the time of his death was not an employee, but an independent contractor within the meaning of the Workmen's Compensation Act. I cannot agree to the proposition that there was no right of control by the insurance company in this case sufficient to bring the decedent within the beneficent provisions of the Workmen's Compensation Act.

Section 42-1-40, U. C. A. 1943, defines an independent contractor as:

"any person, association or corporation engaged in the performance of any work for another, who, while so engaged, is independent of the employer in all that pertains to the execution of the work, is not

subject to the rule or control of the employer, is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design."

In *Parkinson et al.* v. *Industrial Commission et al.*, 110 Utah 309, 172 P. 2d 136, 139, after quoting the above statute we said:

"From these definitions it is apparent that whether a workman is an 'employee' or an 'independent contractor' is dependent on (1) whether the employer has the right to control his execution of the work, (2) whether the work done or to be done is a part or process in the trade or business of the employer, and (3) whether the work done or to be done is a definite job or piece of work."

These tests were approved by this court in an unanimous decision in the recent case of *Ewer* v. *Industrial Commission*, 112 Utah 538, 189 P. 2d 959.

Tests (2) and (3) point so clearly to the relationship of master and servant as to admit of no argument, and no useful purpose could be served by discussing them. I proceed, therefore, to a consideration of the test of "right of control."

The prevailing opinion relies strongly on *Stover Bedding Co.* v. *Industrial Commission*, 99 Utah 423, 107 P. 2d 1027, 134 A. L. R. 1006. Although I dissented in that case, I recognize that it is now the law of this state, and I would feel bound to follow it in any future case involving the same factual situation. But I think the facts of that case are so different from those in the case at bar as to make that case of little value, and certainly not controlling as a precedent in this case. The difference in the two cases are shown by the quotation from the *Stover* case in the prevailing opinion.

In the *Stover* case, decedent was permitted to sell another line of goods as well as the Stover Bedding line. In the instant case decedent was not permitted to sell any other insurance, and could not enter into any other type of em-

ployment without the written consent of his employer. In the *Stover* case, decedent was not limited in his selling territory. In the case at bar, decedent was limited to the state of Utah, and his territory could be further limited at the will of the company. In the *Stover* case, an officer of the company testified that he had no right to control deceased's movements or manner of doing his work. In the instant case, decedent's contract with the company expressly provided that he should promptly render such services as the company might require to effect the discharge of any claims presented by policy-holders, and that he should strictly comply with all written and printed instructions that might from time to time be communicated to him.

The prevailing opinion recognizes that it is the right of control, and not the exercise of control, that is important in determining this question. Nonetheless, exercise of control is strong evidence of right of control. In this case the company exercised its right of control as shown by exhibit 8, a little book issued to its agents by the company, which book contained various tables for the use of its salesmen. In the back of the book are more than 50 pages of instructions to agents. These instructions define in considerable detail the authority of agents; prohibit the sending of collect messages to the home office; prohibit the making of drafts on the home office; give detailed instructions as to manner of conducting correspondence with the home office; prohibit agents from making rebates; provide in detail for the manner of remitting all company funds to the home office; prohibit the use of any receipt forms not authorized by the company; prohibit one agent from writing insurance on the life of another agent of the company; provide detailed instructions as to the manner of filling in application blanks (e. g., must be in ink. Penciled or type-written applications not acceptable. Ditto marks not to be used, etc.) ; require agents to forward all personal notes accepted by them to the company for inspection and registration; provide detailed instructions as to the forwarding of ap-

plications and funds to the home office; provide detailed instructions as to agent's duties in relation to medical examinations; and provide detailed instructions as to the manner of handling claims. There were also instructions as to certain races and nationalities which would not be accepted by the company as risks or would be accepted only under certain conditions or on certain types of policies. There were also instructions as to other classes which would or would not be accepted as risks on various types of policies. These regulations are of somewhat different nature than those above enumerated, and go more to the right of the company to select its risks, than its right of control over its agents. Nevertheless such rules and regulations effectually limited or reduced the number of prospects which could be approached by the agents. From the foregoing it is apparent that not only did the company, by its written contracts with its agents, including the decedent, reserve the right of control, but that the company actually exercised such right of control to the full extent that the nature of the agent's work would permit.

In considering the test of right of control, I think it is important to take into consideration the nature of the work involved. Some types of work, especially unskilled manual labor, will admit of almost complete control by the person for whom the work is performed, even as to the most minute details. However, as one proceeds up the occupational ladder through semi-skilled, skilled, and highly skilled labor and clerical workers, the amount of control which the nature of the work will practically admit of, becomes less and less, and is finally limited to general supervision. In the case of insurance agents, it is manifest that the supervisory officers of the company cannot, as a practical matter, exercise detailed control over the salesmen. However, where the company has the right to exercise, and does exercise general supervisory control over its agents, I think that should be sufficient to bring such agents within the provisions of the Workmen's Compensation Act. As was

said by the Supreme Court of California in the similar case of *Cameron* v. *Pillsbury,* 173 Cal. 83, 159 P. 149, 150:

"A certain amount of freedom of action was inherent in the nature of the work which the injured man performed, but this, however, did not change the character of his employment, for the employer himself still had general supervision and control over it."

The prevailing opinion, although stating that the "independent calling" test has been abandoned by this court as an ultimate test of employer-employee or independent contractor relationship (as indeed it was in the *Stover Bedding* case), concedes that the "independent calling" test may be a factor in determining the ultimate test of right of control. In *Parkinson* v. *Industrial Commission,* 110 Utah 313, 172 P. 2d 136, 139, we said:

"The nature of the skill possessed by or the business engaged in by the workman is of vital consideration in determining whether the employer has the right to control the execution of his work."

We further quoted with approval the following language from "Determination of Employer-Employee Relationships in Social Legislation," 41 Col. L. R. 1015, June, 1941:

"The element which distinguished independent contractorship from master-servant relationship was the absence of the right of control over the performance. The reason why in certain situations the 'employer' did not have such right of control was that in those situations the other party to the contract was *engaged in an independent calling while he was accomplishing the result for which the other had employed him.*"

The "independent calling" test furnishes an additional reason for finding that the company had the right of control in this case.

The fact that our state legislature has excluded insurance salesmen from the provisions of the Unemployment Compensation Act does not support the conclusion reached in the prevailing opinion. On the contrary, it militates against that result. Apparently the legislature considered that an

express enactment was necessary to exclude insurance salesmen from the provisions of the Unemployment Compensation Act. Had it been the purpose of the legislature also to exclude insurance salesmen from the provisions of the Workmen's Compensation Act, it would seem that it would have so provided in that act, just as it did in the case of the Unemployment Compensation Act.

I think the case of *Chatelain* v. *Thackeray*, 98 Utah 525, 100 P. 2d 191, is controlling here. The facts of that case are stated in the prevailing opinion, and there is no need to repeat them here. As pointed out by Mr. Justice LATIMER, the contractual arrangement between the company and the agent in that case was substantially similar to that in the case at bar. It is true that that case involved the doctrine of respondeat superior, and not workmen's compensation, but that difference I regard as immaterial. Nor is it material whether the relationship be one which was regarded as principal and agent, rather than master and servant at common law. The distinctions between those two types of relationship are pointed out in the prevailing opinion, as well as the differences in legal consequences which may result from one relationship or the other. But all of that is immaterial to this discussion. The doctrine of respondeat superior applies both in the case of master and servant, and in the case of principal and agent. And likewise the beneficent provisions of the Workmen's Compensation Act include both types of relationship. That act is not limited in its application to strict master and servant relationship. The employer-employee relationship contemplates both master and servant and principal and agent relationships; with a few exceptions it includes all contracts for services except those of independent contractors as defined by the act.

Nor do I understand that the *Chatelain* case was overruled by the *Stover Bedding Co.* case which came afterward. Each case turned upon its own facts. The line of distinction between them may be fine, but it exists nonetheless.

And the case at bar is more like the *Chatelain* case than the *Stover* case.

It may be pertinent here to repeat the now familiar principle that the Workmen's Compensation Act should be liberally construed to accomplish the beneficent purposes of the act. In close or doubtful cases that construction should be applied which includes rather than excludes particular classes of employees from the benefits of the act.

I also agree with Mr. Justice WADE that during the three months' period from November 15, 1945, to February 15, 1946, when decedent first resumed his connection with the company after his period of military service, that he was an employee and not an independent contractor, whatever construction be placed upon the original contracts between the company and decedent. During this period he received a salary of $150 per month, and he was to take a refresher course entitled, "You, Inc." This course consisted of 85 separate lessons or steps. On December 22, 1945, decedent had completed some but not all of the steps up to and including no. 32. He never completed any of the steps beyond that. The course of training which decedent was taking was the same one which he had taken when he had first been connected with the company. Because of his previous training and experience with the company, he was not required to complete the course. Deceased did not, as stated in the prevailing opinion, complete the course. Rather he was excused from completing it. But this was a matter of grace on the part of the company. The company still had the right of control, although it did not choose to exercise it. And as heretofore pointed out, and as recognized in the opinions of Mr. Justice LATIMER and Mr. Justice WADE, it is the right of control, rather than the exercise of control which is the important factor in determining the relationship.

I do not consider that the views herein advanced are contrary to or inconsistent with the rules and principles

laid down in the *Chatelain* case, the *Stover Bedding* case, the *Parkinson* case, or any other recent case from this jurisdiction discussing the questions here involved. On the contrary, I think the result here contended for is a necessary consequence of the application of the rules laid down by this court in other cases.

For the reasons herein set forth the order of the Industrial Commission ought to be set aside.