451 P.2d 379

**WALLY'S WAGON, INC., a corporation,
Plaintiff,**

**v.**

**STATE TAX COMMISSION of Utah,
Defendant.**

**No. 11155.**

Supreme Court of Utah.

March 3, 1969.

T. Quentin Cannon of Cannon, Duffin & Johnston, Salt Lake City, for plaintiff.

Phil L. Hansen, Atty. Gen., Henry L. Adams, Mary J. Colbath, Asst. Attys. Gen., Salt Lake City, for defendant.

TUCKETT, Justice:

This matter is before the court on a writ of certiorari to review a decision of the State Tax Commission assessing a sales tax deficiency against the plaintiff.

In 1964, Wally's Wagon, Inc., the plaintiff herein, entered into the business of vending ice cream. In the furtherance of that business the plaintiff acquired 20 motor vehicles with refrigerator compartments and entered into agreements with various persons to sell ice cream and other products at retail throughout the Salt Lake area. The plaintiff prepared an agreement which was executed by the plaintiff and the operator of each of the vehicles. The operators who were under the age of 21 years obtained the signature of a parent or guardian to guarantee the performance of the contract. The contract prepared by the

plaintiff is of considerable length, and we deem it unnecessary to set it forth in its entirety. We do, however, mention some of the essential terms and conditions of the contract.

The contract provided that the motor vehicle would be leased to the operator, and as a consideration for the use of the same the operator agreed to purchase ice cream and similar products exclusively from the plaintiff. The contract provided that the plaintiff would pay the costs of operation of the vehicle and carry insurance to protect the operator. The operator of the vehicle designated in the contract as "contractor" agreed to pay cash for the ice cream and other products purchased from the plaintiff, and it further provided that title to the products passed at the time of delivery to the operator. Other terms of the contract provided that the operator might be extended credit by the plaintiff, and that a settlement for the purchases would be had weekly. The contract provided that each operator was to deposit with the plaintiff a cash bond in the sum of $15 to guarantee the faithful performance of the contract, and to deliver the motor vehicle to the plaintiff's place of business at the end of each day. It was provided that the contract might be terminated by either party upon three days' notice and that the plaintiff might also terminate the agreement upon the failure of an operator to pay the rent specified in the contract.

After a hearing the Tax Commission concluded that the sales of ice cream and other products by the plaintiff were retail sales and that sales tax deficiency should be assessed against the plaintiff. It would appear that the Commission made its determination that the operators were not independent contractors upon the following facts: (1) that the plaintiff paid the cost of operation of the vehicles; procured the necessary licenses; and the vehicles were stored at the plaintiff's premises when not in use; (2) that each vehicle carried a sign which indicated that the vehicle was a Wally's Wagon; that each vehicle displayed a list of goods and prices; (3) that each vehicle was stocked daily with the products at the plaintiff's place of business and that an accounting was had weekly with each operator; that the operator incurred no expense in the operation of the vehicle; and that at times the operator was supplied money with which to make change; and (4) that the plaintiff suggested geographical areas in which each operator was to sell the products.

It appears to us that the contract before us was carefully drawn for the purpose of creating a relationship of independent contractor and that it was clearly intended to preclude a claim that a master-servant relationship would exist between the parties. The findings of the Commission as above set forth are insufficient on which to base a determination that the plaintiff and the

operators departed from the provisions of the contract in such a manner and to such an extent that a master-servant relationship was created which would make the plaintiff liable for the payment of sales taxes.[1]

It is contended by the Tax Commission that the plaintiff's proceedings before this court should be dismissed, as it failed to comply with the requirement of Section 59-15-16, U.C.A.1953, as amended. The record indicates that prior to the hearing before the court on the merits the Tax Commission moved to dismiss the proceedings on that ground. The motion to dismiss was by the court denied without reservation. It would seem that that issue has already been decided and needs no further comment here.

The decision of the defendant State Tax Commission is reversed. No costs awarded.

CROCKETT, C. J., and CALLISTER, J., concur.

HENRIOD, Justice:

I do not participate, save to say that the court ducks what I think to be the most important issue of this case: The validity of the statute cussed and discussed in the Hinckley case (Hinckley, Inc. v. State Tax Comm., 17 Utah 2d 70, 404 P.2d 622, 1965),

which statute and the regulations anent thereto lead to a completely unrealistic and unjudicial conclusion, as I tried to point out in my dissent in that case. So: The only lament I have here is to say that when this court avoids that issue, I forgive its members for "I [sic] know not what they do."

ELLETT, Justice (dissenting):

I dissent.

The main opinion disregards the law as it applies to appeals from and writs of review of decisions of taxing authorities.

Our statute[1] provides:

Before making application to the Supreme Court for a writ, the full amount of the taxes, interest and other charges audited and stated in the determination or decision of the tax commission must be deposited with the tax commission and an undertaking filed with the tax commission in such amount and with such surety as the tax commission shall prove [sic] to the effect that if such writ is dismissed or the decision of the tax commission affirmed, the applicant for the writ will pay all costs and charges which may accrue against him in the prosecution of said case; or at the option of the applicant, such undertaking may be in a sum sufficient to cover the taxes, inter-

1. Christean v. Industrial Comm., 113 Utah 451, 196 P.2d 502; Stover Bedding Co. v. Industrial Comm., 99 Utah 423, 107 P.2d 1027, 134 A.L.R. 1006.

1. Sec. 59-15-16, U.C.A.1953.

est and other charges audited and stated in such decision, plus the costs and charges which may accrue against him in the prosecution of such case, in which event, the applicant shall not be required to pay such taxes, interest and other charges as a condition precedent to his application for the writ.

The plaintiff did not comply with this statute but brought this writ of review without either depositing with the defendant the amount of taxes assessed or furnishing an undertaking large enough to cover the taxes, interest, and other charges which might lawfully be assessed against it.

This court has had a similar matter before it in two other cases. In Pacific Intermountain Express Company v. State Tax Commission, 7 Utah 2d 15, 316 P.2d 549 (1957), the taxpayer had paid a tax under protest and then sued in the district court to recover the amount paid. The lower court dismissed the complaint for failure to state a claim. This court on appeal affirmed on the ground that the Supreme Court has exclusive jurisdiction to review, reverse, or annul a decision of the Tax Commission.[2] The Supreme Court at page 20 of the Utah Reports said, 316 P.2d 552:

It is our conclusion that the trial court correctly dismissed the action for the reason that the procedure set forth in the Sales Tax Act itself is the exclusive method of seeking redress from a sales tax assessment. This obviates our consideration of the validity of the tax. No costs are awarded.

In Lambert v. State Tax Commission, 16 Utah 2d 159, 397 P.2d 294 (1964), the trial court ordered the defendant to issue license plates and registration to plaintiff's vehicles, and the State Tax Commission appealed. The case involved the Use Tax Act, which covers property brought into the state for use herein, said act being complementary to the Sales Tax Act. Section 59–16–23, U.C.A.1953, provides in substance that no writ shall issue against the state or any officer thereof to prevent the collection of a tax required to be paid until after the tax is paid under protest. In reversing the trial court, this court held at pages 160 and 161 of the Utah Reports, 397 P.2d 295:

\* \* \* Under all the provisions of the Use Tax Act before recourse can be had to either this court or the district court for relief from a use tax assessment there must either be deposited with the Commission the amount assessed or payment made under protest. Here it is clear this action was brought to avoid these conditions precedent to recourse to the courts. \* \* \*

2.  Sec. 59–15–15, U.C.A.1953.

Taxation is an arbitrary matter. It is governed by statute, and the right of review in the courts is limited by the provisions of the statute.[3] The law is stated in 84 C.J.S. Taxation § 569, page 1129, as follows:

Where the statute requires the amount of the tax to be deposited as a condition precedent to the writ [certiorari], such deposit must be made.

If every litigiously inclined taxpayer could delay paying his taxes until the overworked courts could process his case, the operation of the government might be severely handicapped. The legislature in its wisdom provided that either the tax be paid or a bond filed before the courts are available to the defaulting taxpayer. In this case the plaintiff does not have any right to come into court until it complies with the statute: either pay under protest or file the bond. It has done neither.

In disregarding the law as set forth above, the prevailing opinion simply says the issue has already been disposed of. The facts are these: Shortly after the writ from this court was issued, the defendant moved to dismiss it. The plaintiff filed an affidavit in which it claimed that the statute was unconstitutional and that the defendant was guilty of discrimination against the plaintiff in not entering into waivers, etc. At that time no briefs had been filed by either party; and in order to assure plaintiff a full and fair opportunity to be heard, this court denied the motion to dismiss.

If by denying the motion at that time we committed error, we should now acknowledge it and correct it. This court wrote no opinion as to why the motion was denied, and we should not by means of a simple minute entry overrule the statutes of this state and the prior decisions of this court.

If by that ruling we have bound ourselves, then we should reconsider our ruling. We ought not say that we are powerless to rule correctly simply because we erred when we shot from the hip.

The defendant briefed the question of the standing of plaintiff before this court. However, the plaintiff simply ignored the matter just as the prevailing opinion now attempts to do.

I would dismiss the writ as having been improvidently granted.

3. Lehigh Valley R. Co. v. Sohmer, 174 App.Div. 732, 161 N.Y.S. 557, affd. 220 N.Y. 689, 116 N.E. 1057. See West Digest, Taxation, ☞493(1).